**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
                *Plaintiff-Appellee,*

v.

ROBERT TIMOTHY SWANK, SR.,
                *Defendant-Appellant.*

No. 11-30072

D.C. No.
1:10-cr-00086-
RFC-1

OPINION

Appeal from the United States District Court
for the District of Montana
Richard F. Cebull, Chief District Judge, Presiding

Argued and Submitted
March 6, 2012—Portland, Oregon

Filed April 16, 2012

Before: William A. Fletcher, Raymond C. Fisher, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Bybee

## COUNSEL

Anthony R. Gallagher, Federal Defender, Great Falls, Montana, for the appellant.

Marcia Hurd and Lori Harper Suek (argued), Assistant United States Attorney, Billings, Montana, for the appellant.

## OPINION

BYBEE, Circuit Judge:

Robert Timothy Swank Sr. ("Swank") pled guilty to Abusive Sexual Contact, in violation of 18 U.S.C. §§ 2244(a)(5), 1153(a). The victim was his wife's minor niece who had been

staying with the couple while her mother was away. At sentencing, the district court imposed a two-level Guidelines enhancement, finding that the victim was "in the custody, care, or supervisory control of" Swank. Swank was sentenced to 151 months' imprisonment. He appeals the imposition of the two-level enhancement, claiming that he was not entrusted with custody, care, or supervisory control of the victim. We affirm.

## I.   BACKGROUND AND PROCEEDINGS

On June 23, 2010, the Bureau of Indian Affairs ("BIA") received a report from the Crow Tribal Law Enforcement that a child had been abused on the reservation. At the time of the relevant conduct, Swank lived in south central Montana with his wife, Annie Swank ("Annie"), their two-year old daughter, and Annie's three-year old daughter from a prior relationship. Annie reported that Swank had sexually abused her seven-year-old niece ("the victim"). The child had been staying at their home since June 21, 2010, when Annie's sister asked Annie to watch her daughter so she could attend the Sun Dance ceremony.

On the first night that the victim was staying with them, Annie observed Swank dim the lights in the children's bedroom and then enter the room. She told him to leave the girls alone while they slept. Annie recalled that the next morning Swank was cooking breakfast and the children were watching television.

Later that night, June 22, Annie entered the living room, turned on the light, and observed the victim jump up from Swank's lap and pull up her trunks. Swank made a sudden movement, but remained on the couch with his legs open. When Annie asked him why he was sitting there with his legs open, he responded, "you're sick in the head." Before going to bed that night, the victim told Annie that she was scared and that Swank had kissed her and told her to wait for him

later. The victim further reported that the previous night Swank entered her room and started "humping" and "kissing" her. He then removed her clothing, bent her over, and "humped" her.

When she was interviewed on June 28, the victim confirmed that Swank had entered her room when she was sleeping and inappropriately touched her on two different occasions during her stay with the Swanks.

Swank was charged by complaint and arrested on July 6, 2010. On the morning of his trial, Swank pled guilty to a superseding information, charging him with Abusive Sexual Contact, in violation of 18 U.S.C. § 2244(a)(5).[1] After pleading guilty, but before sentencing, Swank submitted a written statement admitting the allegations.

Using the 2010 Guidelines Manual, the Probation Office calculated Swank's base offense level at 30, and then applied an upward adjustment because the victim was under twelve years old (+4) and was "in the custody, care, or supervisory control of the defendant" (+2). The office also recommended a two-level reduction for acceptance of responsibility, resulting in a total offense level of 34. Because Swank's criminal history category was I, the Guidelines range of imprisonment was 151 to 188 months.

Swank filed objections to the presentence report relating to the calculation of the Guidelines range. Relevant to this appeal, Swank objected to the assessment of a two-level increase for the "custody, care, or supervisory control" spe-

---

[1]Swank was charged in the same count with being "[an] Indian who commits against the person . . . of another Indian . . . felony child abuse . . . within the Indian country," for which the same law and penalties apply as to "all other persons committing [the] offense[ ], within the exclusive jurisdiction of the United States." 18 U.S.C. § 1153(a); see also *United States v. Bruce*, 394 F.3d 1215, 1219-20 (9th Cir. 2005).

cific offense characteristic, pursuant to U.S. Sentencing Guidelines ("U.S.S.G.") § 2A3.1(b)(3). The district court overruled the objections, and sentenced Swank to 151 months' imprisonment, the low end of the Guidelines range, to be followed by ten years of supervised release.

## II.  DISCUSSION

Swank appeals a single issue: whether the district court misapplied U.S.S.G. § 2A3.1(b)(3) because Swank was not "entrusted" with the "custody, care, or supervisory control" of the victim. We review " 'the district court's interpretation of the Sentencing Guidelines de novo . . . and the district court's factual findings for clear error.' " *United States v. Cantrell*, 433 F.3d 1269, 1279 (9th Cir. 2006) (quoting *United States v. Kimbrew*, 406 F.3d 1149, 1151 (9th Cir. 2005)). We have previously noted an intracircuit conflict as to whether the standard of review for application of the Guidelines to the facts is de novo or abuse of discretion. *See United States v. Rivera*, 527 F.3d 891, 908 (9th Cir. 2008). The choice of standard, however, does not affect the outcome of this case. *See United States v. Yip*, 592 F.3d 1035, 1038 (9th Cir. 2010).

**[1]** The Guidelines for the offense of Abusive Sexual Conduct provide that if the offense involved criminal sexual abuse or attempt to commit criminal sexual abuse, § 2A3.1 should be applied. *See* U.S.S.G. § 2A3.4(c)(1). Under § 2A3.1(b)(3), if the victim was in the "custody, care, or supervisory control of the defendant," a two-level increase shall be applied to the base offense level of 30. Application Note 3(A) states:

> Subsection (b)(3) is to be construed broadly and includes offenses involving a victim less than 18 years of age entrusted to the defendant, whether temporarily or permanently. For example, teachers, day care providers, baby-sitters, or other temporary caretakers are among those who would be subject to this enhancement. In determining whether to apply this

enhancement, the court should look to the actual relationship that existed between the defendant and the minor and not simply to the legal status of the defendant-minor relationship.

*Id.* § 2A3.1 cmt. n.3(A).

**[2]** Although we have not had occasion to address the application of this subsection in a case such as this, we have interpreted the same phrase as applied in § 2G1.3(b)(1),[2] for crimes involving sex trafficking. *See United States v. Brooks*, 610 F.3d 1186, 1200 (9th Cir. 2010). In *Brooks*, we explained that "care," "custody" or "supervisory control" refers to a pre-existing role "comparable to that of . . . parents, relatives, and legal guardians," because "care, custody, and supervisory control of minors are quintessential duties" of parents, relatives, and legal guardians. *Id.* We concluded that one who "otherwise" exercises custody, care, or supervisory control exercises "parent-like care . . . albeit 'in a different way or manner' or 'in different circumstances' than traditional guardians." *Id.* at 1200-01 (quoting Webster's New International Dictionary 1598 (3d ed. 1976)). We pointed out that "[t]eachers, day care providers, and baby-sitters all act *in loco parentis*, in a position of authority over the minor that exists apart from the conduct giving rise to the offense." *Id.* at 1201. "[I]t is the abuse of authority over the minor that makes the offense conduct more egregious and thus worthy of enhancement." *Id.*; *see also United States v. Merritt*, 982 F.2d 305, 307 (8th Cir. 1992) (noting that one justification for the enhancement is that the defendant is a person the victim trusts and thus the potential for greater damage exists). In *Brooks*,

---

[2]Section 2G1.3(b)(1) provides that "[i]f (A) the defendant was a parent, relative, or legal guardian of the minor; or (B) the minor was otherwise in the custody, care, or supervisory control of the defendant, increase by 2 levels." U.S.S.G. § 2G1.3(b)(1) (emphasis removed). The application notes refer to "teachers, day care providers, baby-sitters, or other temporary caretakers." *Id.* § 2G1.3 cmt. n.2(A).

the defendants were charged with picking up two teenage girls and turning them into prostitutes. 610 F.3d at 1191-92. We concluded that the defendants had no relationship to the girls other than the crime itself and that it was error to enhance their sentence under U.S.S.G. § 2G1.3(b)(1). *Id.* at 1201-02.

In *United States v. Blue*, 255 F.3d 609 (8th Cir. 2001) (per curiam), the Eighth Circuit reversed the district court's application of the enhancement, finding that there was insufficient evidence to show that the defendant had custody, care, or supervisory control over the victim. *See id.* at 614-15. Blue, the defendant, had lived with the victim and his mother for six months a year prior to the incident. *Id.* at 613-14. But on the night in question, Blue was present only to attend a gathering where a group of adults were drinking. *See id.* at 610-11, 614. There was no evidence that, at the time of the assault, the child's mother had transferred care to Blue. *See id.* at 614-15. "Blue was never entrusted with custody of the child"; the prior relationship facilitated "proximity," but "d[id] not establish custody." *Id.* at 614; *see also United States v. Carson*, 539 F.3d 611, 612 (7th Cir. 2008) (interpreting *Blue* as holding that the defendant did not have "custody or control because no one had entrusted the minor to him; he simply took advantage of an opportunity when the mother could not protect her child").

**[3]** In another case, *United States v. Kenyon* (*Kenyon II*), 481 F.3d 1054, 1072 (8th Cir. 2007), the Eighth Circuit upheld a sentence enhancement based on facts similar to this case. In that case, a minor child, A.L., stayed with Kenyon's common-law wife approximately two Fridays each month for several years. *United States v. Kenyon* (*Kenyon I*), 397 F.3d 1071, 1074 (8th Cir. 2005). A.L. slept in a bedroom belonging to the daughter of Kenyon and his common-law wife, and Kenyon would gain access to A.L. by entering the bedroom while the children were sleeping. *Id.* Kenyon regularly fed the children staying in his home, drove them around, and there

was some evidence that he had responsibility for assigning chores and disciplining all of the children. *See Kenyon II*, 481 F.3d at 1072. The Eighth Circuit held that a "defendant has care, custody, or supervisory control if the victim has been entrusted to him," and "even peripheral or transitory custody" may support the enhancement. *Id.* (internal quotation marks omitted). Further, the court recognized that the custody need not be exclusive, "[s]o long as the defendant ha[d] some responsibility for the child." *Id.*

**[4]** Although in many cases the defendant will exercise a parent-like role, *see United States v. Miller*, 293 F.3d 468, 470 (8th Cir. 2002) (victim referred to Miller as "Dad"); *United States v. Sandoval*, 506 F. Supp. 2d 582, 597 (D.N.M. 2007) (victim was Sandoval's biological daughter), Application Note 3 makes clear that parental status is not required. The note provides examples of temporary caretakers who could be subject to the enhancement, such as teachers, day care providers, and babysitters. Such persons are not, typically, parents, but they "all act *in loco parentis*." *Brooks*, 610 F.3d at 1201. That is, such caretakers have been entrusted with parent-like authority to care for, supervise, and, as necessary, discipline the child, even if that authority is limited or brief. Thus, in construing the language of the Guidelines broadly, as the application notes require, any relationship in which the defendant actually plays a caretaking role may subject that defendant to the enhancement.

In this case, the district court found that Swank resided in the home where the abuse occurred and was equally responsible with his wife, the child's aunt, for her care. The district court did not clearly err in this conclusion.

**[5]** The mere fact that Annie, who was clearly entrusted with the care of the child, was married to Swank may not be sufficient to show that Swank was entrusted with some level of care over the victim. Additionally, contrary to the government's argument, it was not the fact that Annie was sleeping

that leads us to conclude that Swank was in the position of exercising custody, care, or supervisory control. *See Carson*, 539 F.3d at 612. Swank, however, resided in the same home as Annie, had a child with her, and shared the caretaking responsibilities of the two children who resided in the home on a full-time basis. Swank was the victim's uncle, was father and step-father to her two young cousins living in the home, and was present while the victim stayed with his family. Thus, Swank was not a transitory presence in the home, but an adult with legal obligations to the children living with him. During the relevant time period, Swank prepared food for all of the children, thus evidencing the kind of "care" that the Eighth Circuit in *Kenyon II* found to be persuasive evidence of custody, care, or supervisory control. *See* 481 F.3d at 1072.

**[6]** The district court's application of the enhancement in this case is fully supported by our explanation for why the enhancement exists: "it is the abuse of authority over the minor that makes the offense conduct more egregious and thus worthy of enhancement." *Brooks*, 610 F.3d at 1201. As the district court explained, Swank "being the other adult that was residing in that home, had not only the right but the responsibility to exercise that type of control for [the victim's] care." We agree. The district court did not err in finding that the victim was in the custody, care, or supervisory control of Swank and did not err in applying the enhancement in this case.

AFFIRMED.