**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

<table>
<tr><td>

UNITED STATES OF AMERICA,<br>
*Plaintiff-Appellee*,

v.

PEDRO CABRERA-GUTIERREZ,<br>
*Defendant-Appellant*.

</td><td>

No. 12-30233

D.C. No.<br>
2:12-cr-02027-<br>
WFN-1

OPINION

</td></tr>
</table>

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, Senior District Judge, Presiding

Argued and Submitted
April 11, 2013—Seattle, Washington

Filed June 3, 2013

Before: A. Wallace Tashima and Consuelo M. Callahan,
Circuit Judges, and Raner C. Collins, District Judge.[*]

Opinion by Judge Callahan

---

[*] The Honorable Raner C. Collins, District Judge for the U.S. District Court for the District of Arizona, sitting by designation.

## SUMMARY[**]

### Criminal Law

Affirming a conviction and sentence for failing to register under the Sex Offender Registration and Notification Act (SORNA), the panel held that Congress has the authority under the Commerce Clause to enact SORNA and to require the defendant, a convicted sex offender who traveled interstate, to register as a sex offender.

The panel also held that the defendant's admission in his plea agreement that the victim of his sexual abuse was unable to consent because of her intoxication is sufficient, under the modified categorical approach, to render his state conviction under Or. Rev. Stat. § 263.425 (1998) a crime of sexual abuse pursuant to 18 U.S.C. § 2242, thereby rendering him a Tier III sex offender at sentencing.

### COUNSEL

Rebecca L. Pennell, Federal Defenders of Eastern Washington & Idaho, Yakima, Washington, for Defendant-Appellant.

Michael C. Ormsby, United States Attorney, and Alison L. Gregoire (argued), Assistant United States Attorney, Yakima, Washington, for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

CALLAHAN, Circuit Judge:

Pedro Cabrera-Gutierrez ("Cabrera") appeals his conviction and sentence for failing to register under the Sex Offender Registration and Notification Act ("SORNA"). On appeal he advances two arguments. First, he asserts that Congress lacked authority under the Commerce Clause to compel his registration as a sex offender. Second, he contends that he should have been sentenced as a Tier I, rather than a Tier III, sex offender. We hold that Congress has authority under the Commerce Clause to compel Cabrera, a convicted sex offender who traveled interstate, to register under SORNA. We also hold that under the modified categorical approach, Cabrera's plea to the state charge of sexual abuse rendered him a Tier III sex offender. Accordingly, we affirm Cabrera's conviction and sentence.[1]

**I**

Cabrera was born in Mexico and has been removed from the United States several times. In 1998, Cabrera was

---

[1] Cabrera raises a third issue: whether the government improperly denied him a third level of reduction for acceptance of responsibility under the United States Sentencing Guidelines § 3E1.1(b). However, Cabrera recognizes that we rejected this position in *United States v. Johnson*, 581 F.3d 994, 1001 (9th Cir. 2009) (holding that "the allocation and expenditure of prosecutorial resources for the purposes of defending an appeal is a rational basis for declining to move for the third reduction point"), and that our three-judge panel is foreclosed from reconsidering the issue. *See United States v. Gay*, 967 F.2d 322, 327 (9th Cir. 1992). Thus, Cabrera has raised the issue to preserve it should the law change.

convicted in Oregon of second degree sexual assault.  In his guilty plea statement, Cabrera admitted:

> I on May 2, 1998 did knowingly have sexual intercourse with [redacted] and she was unable to legally consent to having sexual intercourse with me because she was under the influence of alcohol at the time of the sexual intercourse.  Further [redacted] was 15 years old on May 2, 1998.

Cabrera was sentenced to 36 months' imprisonment and required to register as a sex offender.  When Cabrera was released from custody in September 2000, he was advised of his responsibility to register as a sex offender under Oregon law and promptly removed to Mexico.

On February 3, 2012, Cabrera was arrested for a traffic violation in Yakima, Washington.  He was subsequently charged in the district court with failing to register as a sex offender in violation of 18 U.S.C. § 2250.  Specifically, the indictment alleged that Cabrera was an individual who was required to register under SORNA, and having traveled in interstate commerce, did knowingly fail to register in violation of 18 U.S.C. § 2250.  The indictment further alleged that Cabrera had failed to meet his registration obligation during a period of time from February 3, 2011, through February 3, 2012.

Cabrera filed a motion to dismiss, arguing that Congress lacked authority to require him to register as a sex offender. The district court denied the motion, noting that although *United States v. George*, 625 F.3d 1124 (9th Cir. 2010), had been vacated, 672 F.3d 1126 (9th Cir. 2012), "the Court finds

the reasoning in *George* persuasive and notes that the opinion was vacated on different grounds." Thereafter, Cabrera entered a conditional plea of guilty, preserving his right to appeal the denial of his motion to dismiss.

A Pre-Sentence Investigation Report ("PSR") was prepared which listed Cabrera's offense level as 16 under United States Sentencing Guidelines § 2A3.5(a)(1) because he was required to register as a Tier III sex offender. Cabrera objected to the PSR. He argued that his prior conviction only qualified him as a Tier I sex offender, not a Tier III offender, because his Oregon conviction was not comparable to, or more severe than, "aggravated sexual abuse or sexual abuse," as defined in 42 U.S.C. § 16911. The district court rejected this argument noting that Cabrera's guilty plea admitted that the girl was intoxicated and 15 years old. The court gave Cabrera credit for time served on a prior conviction and sentenced him to 17 months in prison with three years of supervised release. Cabrera filed a timely notice of appeal from his conviction and sentence.

## II

We first review the district court's denial of Cabrera's motion to dismiss the indictment. We review that decision de novo. *United States. v. Milovanovic*, 678 F.3d 713, 719 (9th Cir. 2012) (en banc); *United States v. Marks*, 379 F.3d 1114, 1116 (9th Cir. 2004).

Cabrera argues that SORNA requires sex offenders to register their names, addresses, employment or school information, and to appear in person at least once a year for verification of their information. This, Cabrera asserts, is an unconstitutional regulation of his inactivity under the

Supreme Court's recent opinion in *National Federation of Independent Business v. Sebelius*, – U.S. –, 132 S. Ct. 2566 (2012). Cabrera accepts that Congress has broad powers under the Commerce Clause, but points out that in *Sebelius*, the Court stated that "[c]onstruing the Commerce Clause to permit Congress to regulate individuals precisely *because* they are doing nothing would open a new and potentially vast domain to congressional authority." *Id*. at 2587. Cabrera further argues that, unlike the Affordable Care Act, SORNA has nothing to do with commerce. Its purpose is to "protect the public from sex offenders and offenders against children." 42 U.S.C. § 16901. He argues that this purpose, while laudable, is not an appropriate purpose under the Commerce Clause because public safety measures lie exclusively in the realm of the States.

In anticipation of the government's reliance on "an additional jurisdictional hook," such as travel across state lines, Cabrera argues that SORNA requires all sex offenders to register, regardless of travel, and that the duty to register under SORNA precedes any act of travel. Thus, he continues, "SORNA would hold an individual who fails to register, travels and then registers equally responsible as an individual who never registers, before or after travel." He argues, citing *Sebelius*, 132 S. Ct. at 2590, that "the proposition that Congress may dictate conduct of an individual today [i.e., registering as a sex offender] because of prophesied future activity [i.e., interstate travel] finds no support in the applicable Commerce Clause precedent." Cabrera concludes that because Congress lacks the power to require an individual to register as a sex offender, it follows that it cannot penalize him for failing to register, even if he has traveled in interstate commerce.

Cabrera's arguments may be creative but they are not persuasive. In *United States v. Lopez*, 514 U.S. 549 (1995), the Supreme Court recognized three broad categories of activity that Congress may regulate under its commerce power: (1) "Congress may regulate the use of the channels of interstate commerce;" (2) "Congress is empowered to regulate and protect the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities;" and (3) "Congress' commerce authority includes the power to regulate those activities having a substantial relation to interstate commerce." *Id.* at 558–59. The government asserts that the requirement of interstate travel meets "the first two categories of Congress's Commerce Clause authority, because an interstate traveler is both a person "in interstate commerce" and one who uses the "channels of interstate commerce."

We held in *George*, 625 F.3d at 1130, *vacated on other grounds*, 672 F.3d 1126, that "Congress had the power under its broad commerce clause authority to enact the SORNA," and we now reaffirm that holding, which has been embraced by our fellow circuits. In *George*, we explained:

> SORNA was enacted to keep track of sex offenders. *See Carr v. United States*, – U.S. –, 130 S. Ct. 2229, 2240, 176 L. Ed.2d 1152 (2010) ("[SORNA was] enacted to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks."). Such offenders are required to "register, and keep registration current, in each jurisdiction" where the offender lives, works, or goes to school. 42 U.S.C. § 16913(a). As stated by

the Eighth Circuit, "[t]his language indicates Congress wanted registration to track the movement of sex offenders through different jurisdictions." *United States v. Howell*, 552 F.3d 709, 716 (8th Cir. 2009). "Under § 2250, Congress limited the enforcement of the registration requirement to only those sex offenders who were either convicted of a federal sex offense or who move in interstate commerce." *Id*. (citing 18 U.S.C. § 2250(a)(2)). The requirements of § 16913 are reasonably aimed at "regulating persons or things in interstate commerce and the use of the channels of interstate commerce." *Id*. at 717 (quoting [*United States v.*] *May*, 535 F.3d [912] at 921 [(8th Cir. 2008)]) (quotation marks omitted).

625 F.3d at 1129–30.

In *George* we noted that, in addition to the Eighth Circuit, the Fourth, Fifth, Tenth, and Eleventh Circuits had upheld SORNA's constitutionality under the Commerce Clause.[2]

---

[2] *See United States v. Gould*, 568 F.3d 459, 471 (4th Cir. 2009) (holding "that § 2250(a) does not violate the Commerce Clause"); *United States v. Whaley*, 577 F.3d 254, 258 (5th Cir. 2009) (stating "[t]hrough § 2250, Congress has forbidden sex offenders from using the channels of interstate commerce to evade their registration requirements, and we have no doubt that it was within its power under the Commerce Clause to do so"); *United States v. Hinckley*, 550 F.3d 926, 940 (10th Cir. 2008) (stating "[b]y requiring that a sex offender travel in interstate commerce before finding a registration violation, SORNA remains well within the constitutional boundaries of the Commerce Clause"), *abrogated on other grounds by Reynolds v. United States*, – U.S. –, 132 S. Ct. 975, 978 (2012); *United*

The Second Circuit has also affirmed the constitutionality of SORNA under the Commerce Clause.[3] In at least two extant opinions we have approvingly referenced *George*.[4] Moreover, the Supreme Court's opinions in *Reynolds v. United States*, – U.S. –, 132 S. Ct. 975 (2012), and *Carr v. United States*, – U.S. –, 130 S. Ct. 2229 (2010), affirming but limiting SORNA, implicitly affirm SORNA's constitutionality.

In sum, we see no reason to depart from our previously expressed opinion and reaffirm that Congress had the power under the Commerce Clause to enact SORNA.

Cabrera's attempt to separate SORNA's interstate travel and duty to register components fails for several reasons. First, because Cabrera was charged and convicted of failing to register after having traveled in interstate commerce, it is questionable whether he may properly challenge the duty to

---

*States v. Ambert*, 561 F.3d 1202, 1210 (11th Cir. 2009) (holding that "Section 2250 is a proper regulation falling under either of the first two *Lopez* categories because it regulates both the use of channels of interstate commerce and the instrumentalities of interstate commerce").

[3] *See United States v. Guzman*, 591 F.3d 83, 90 (2d Cir. 2010) (stating "[w]e have no difficulty concluding that § 2250(a) is a proper congressional exercise of the commerce power under *Lopez*").

[4] *See United States v. Fernandes*, 636 F.3d 1254, 1256 n.2 (9th Cir. 2011) (noting the argument that SORNA "is an invalid exercise of Congress' power under the Commerce Clause was rejected by this court" in *George*); *United States v. Valverde*, 628 F.3d 1159, 1161 (9th Cir. 2010) (noting that *George's* holding of constitutionality was binding).

register without interstate travel.[5]  More importantly, such a parsing of SORNA has been rejected by the Supreme Court and the circuit courts that have considered the issue.  In *Carr*, the Court explained that "Section 2250 is not a stand-alone response to the problem of missing sex offenders; it is embedded in a broader statutory scheme enacted to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks."  130 S. Ct. at 2240.  The Seventh Circuit explained the symbiotic relationship between the two sections in *United States v. Sanders*, 622 F.3d 779, 783 (7th Cir. 2010), stating:

> [S]ection 16913 cannot be divorced from section 2250 in evaluating whether the Commerce Clause gives Congress the authority to require anyone convicted of a sex offense to register.  Imposing a duty to register as a matter of federal law would do little to solve the problem of sex offenders slipping through the cracks absent the enforcement mechanism supplied by section 2250.  Interstate travel by a sex offender is not merely a jurisdictional hook but a critical part of the problem that Congress was attempting to solve, for whenever sex offenders cross state lines they tend to evade the ability of any individual state to track them and thereby "threaten the efficacy of the statutory scheme. . . ." [*Carr*, 130 S. Ct.] at 2239; *see also id.* at 2238 (it was reasonable for

---

[5] The propriety of SORNA's application to *intrastate* travel by a sex offender is before the Supreme Court in *United States v. Kebodeaux*, No. 12-418, *cert. granted*, 133 S. Ct. 928 (2013).

Congress to give States primary responsibility to supervise and ensure compliance among state sex offenders and subject such offenders to federal criminal liability only when "they use the channels of interstate commerce in evading a State's reach"); *id*. at 2240 (act of travel by sex offender is not merely a jurisdictional predicate but is "the very conduct at which Congress took aim"); *id*. at 2241 (section 2250 "subject[s] to federal prosecution sex offenders who elude SORNA's registration requirements by traveling in interstate commerce").

The Second, Fifth, Eighth, and Eleventh Circuits are in accord.[6]

Furthermore, we have recently upheld the registration requirement under the Necessary and Proper Clause. In *United States v. Elk Shoulder*, 696 F.3d 922, 931–932 (9th Cir. 2012), we held:

---

[6] *See Guzman*, 591 F.3d at 90 (stating that "Sections 2250 and 16913 were enacted as part of the Adam Walsh Child Protection and Safety Act of 2006, and are clearly complementary"); *Whaley*, 577 F.3d at 259 (same); *United States v. Howell*, 552 F.3d 709, 716 (8th Cir. 2009) (concluding that "the statutory scheme Congress created to enforce § 16913 demonstrates Congress was focused on the interstate movement of sex offenders, not the intrastate activity of sex offenders"); *Ambert*, 561 F.3d at 1212 (commenting that "an examination of § 16913 and § 2250 makes the interstate focus abundantly clear," and "the only federal enforcement provision against individuals is found in § 2250, which explicitly subjects state sex offenders to federal prosecution under SORNA only if they travel in interstate or foreign commerce and fail to register under § 16913") (internal quotation marks omitted).

> The Supreme Court has "made clear that, in
> determining whether the Necessary and
> Proper Clause grants Congress the legislative
> authority to enact a particular federal statute,
> we look to see whether the statute constitutes
> a means that is rationally related to the
> implementation of a constitutionally
> enumerated power." *Comstock*, 130 S. Ct. at
> 1956. . . [A] registration requirement aimed at
> informing the public of the identity and
> location of individuals convicted of sex
> offenses is reasonably related to Congress's
> authority to ensure the safety of the public,
> which in turn flows from its authority to enact
> and enforce criminal laws.

The Second, Third, Fourth, Fifth, Seventh and Eleventh
Circuits are in agreement.[7] Accordingly, we reject Cabrera's

---

[7] *See Guzman*, 591 F.3d at 91 (stating "[t]o the extent that § 16913
regulates solely intrastate activity, its means are reasonably adapted to the
attainment of a legitimate end under the commerce power") (quotation
marks and citations omitted); *United States v. Pendleton*, 636 F.3d 78, 88
(3d Cir. 2011) (holding that "§ 16913 is a law made in pursuance of the
constitution because it is necessary and proper for carrying into execution
Congress's power under the Commerce Clause") (quotation marks and
citations omitted); *Gould*, 568 F.3d at 475 (stating "[r]equiring all sex
offenders to register is an integral part of Congress' regulatory effort and
the regulatory scheme could be undercut unless the intrastate activity were
regulated") (quotation marks and citation omitted); *Whaley*, 577 F.3d at
261(concluding that "that requiring sex offenders to register both before
and after they travel in interstate commerce . . . is 'reasonably adapted' to
the goal of ensuring that sex offenders register and update previous
registrations when moving among jurisdictions"); *United States v.
Vasquez*, 611 F.3d 325, 331 (7th Cir. 2010) (holding that "[t]o the extent
that § 16913 regulates solely intrastate activity, the regulatory means

contention that Congress lacked the authority to enact SORNA and require that a convicted sex offender, like Cabrera, who travels interstate register.

Finally, whatever the merits of Cabrera's reading of *Sebelius*, SORNA does not regulate individuals "precisely because they are doing nothing," 132 S. Ct. at 2587. SORNA applies only to individuals who have been convicted of a sexual offense. Thus, registration is required only of those individuals who, through being criminally charged and convicted, have placed themselves in a category of persons who pose a specific danger to society. Moreover, SORNA's application to Cabrera is based on his further admitted activities of traveling in interstate commerce and then failing to register. Thus, SORNA does not punish the type of inactivity addressed in *Sebelius*. We adhere to precedent and sound reasoning in concluding that Congress had the authority to enact SORNA and that SORNA's application to Cabrera is constitutional.

## III

We next consider Cabrera's challenges to his sentence. We review a district court's interpretation of the Sentencing Guidelines de novo, and the court's factual findings for clear error. *United States v. Swank*, 676 F.3d 919, 921 (9th Cir.

---

chosen are reasonably adapted to the attainment of a legitimate end under the commerce power") (quotation marks omitted); *Ambert*, 561 F.3d at 1212 (stating that "Section 16913 is reasonably adapted to the attainment of a legitimate end under the commerce clause").

2012); *United States v. Laurienti*, 611 F.3d 530, 551–52 (9th Cir. 2010).**[8]**

As applied to Cabrera's situation, 42 U.S.C. § 16911(4) defines a "tier III sex offender" as "a sex offender whose offense is punishable by imprisonment for more than 1 year and . . . is comparable to or more severe than . . . aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18)."**[9]**   Section 2242 defines the crime of

---

   **[8]** In these cases, we have noted "an intracircuit conflict as to whether the standard of review for application of the Guidelines to the facts is de novo or abuse of discretion." *Swank*, 676 F.3d at 921–22.   However, as in those cases, we need not resolve this conflict because our conclusion is the same under either standard.  *See Swank*, 676 F.3d at 922; *Laurienti*, 611 F.3d at 552.

   **[9]** 42 U.S.C. § 16911(4) defines a Tier III offender as follows:

> The term "tier III sex offender" means a sex offender whose offense is punishable by imprisonment for more than 1 year and--
>
> (A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:
>
>> (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18); or
>>
>> (ii) abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years;
>
> (B) involves kidnapping of a minor (unless committed by a parent or guardian); or

sexual abuse to include knowingly engaging "in a sexual act with another person if that other person is – (A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act."[10]

---

(C) occurs after the offender becomes a tier II sex offender.

[10] 18 U.S.C. § 2242 reads:

Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly--

(1) causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping); or

(2) engages in a sexual act with another person if that other person is--

(A) incapable of appraising the nature of the conduct; or

(B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;

or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

The Oregon statute governing Cabrera's prior conviction stated:

> (1) A person commits the crime of sexual abuse in the second degree when that person subjects another person to sexual intercourse, deviate sexual intercourse . . . and the victim does not consent thereto.

Or. Rev. Stat. § 263.425 (1998).

Cabrera argues that the district court misunderstood the nature of his plea. He asserts that he "never admitted to having intercourse with someone incapable of providing actual consent, as required by federal law. All [he] admitted was having sexual intercourse with someone who was legally incapable of consenting, due to being under the influence of alcohol and due to age." Cabrera claims that being under the influence of drugs or alcohol "does not vitiate the capacity to make voluntary decisions."

Cabrera also argues that the limited nature of his admission has significance under Oregon law. He asserts that under "Oregon law all individuals under 18 are legally incapable of consenting to intercourse, regardless of actual consent," and incapacity based on the minor's age is second degree sexual assault. *See* Or. Rev. Stat. § 163.315. Cabrera contrasts this with an Oregon law that provides that a person who is mentally incapacitated or physically helpless cannot consent to intercourse, and that a violation of this statute constitutes first degree rape. *See* Or. Rev. Stat. § 163.375(d). Cabrera claims that when he pled guilty, he "only intended to establish the offense of second degree child abuse, not the more serious offense of first degree rape."

Cabrera goes on to argue, citing *Young v. Holder*, 697 F.3d 976, 983 (9th Cir. 2012) (en banc), that because "the modified categorical approach only captures those facts necessarily admitted by a defendant as part of his plea, . . . [w]here a particular fact is not necessary to sustain a conviction, it cannot be deemed admitted unless the record is absolutely clear that this was the defendant's intent." Cabrera reasons that because the only fact necessary for his Oregon conviction was that the victim was under the age of 18, the additional fact that the victim had also been drinking might have underscored her inability to consent, but "did not establish that she was so intoxicated that she was incapable of doing so." Cabrera concludes that because he "did not necessarily admit to having intercourse with an individual incapable of providing actual consent, the 'sexual abuse' requirement under federal law was not met," and he should not have been classified as a Tier III offender.[11]

We agree with the parties that the Oregon conviction is not a categorical match to 18 U.S.C. § 2242, but conclude that the application of the modified categorical approach establishes that Cabrera is a Tier III offender. Cabrera's plea is a document that the court may consider under the modified categorical approach. *United States. v. Castillo-Marin*, 684 F.3d 914, 919 (9th Cir. 2012) (noting that, "[u]nder the modified categorical approach, courts may rely only on documents that give [it] the certainty of a generic finding, including the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented" (internal quotation marks and citations omitted)).

---

[11] It is undisputed that if Cabrera is not a Tier III offender, he is a Tier I offender.

Cabrera's arguments concerning Oregon law and his plea agreement are not persuasive.  First, the federal definition of "sexual abuse" as set forth in 18 U.S.C. § 2243, which requires that the victim be "incapable of appraising the nature of the conduct," does not cover only convictions where the victim was "incapable of consent by reason of mental defect, mental incapacitation or physical helplessness."  Such a limited interpretation is contrary to a common-sense reading of the statute, would render a section of the statute redundant,[12] and is not supported by any authorities.

Second, intoxication can be the cause of a victim's incapacity to consent.  *See United States v. Smith*, 606 F.3d 1270, 1281–82 (10th Cir. 2010) (noting that victim was heavily intoxicated before the assault); *United States v. Carter*, 410 F.3d 1017, 1027 (8th Cir. 2005) (holding that evidence the victim smoked marijuana and drank alcohol, and felt drowsy and really tired, was sufficient to conclude that the victim was unable to appraise the nature of the perpetrator's conduct).[13]

---

[12] If the language in § 2242(1)(A) requiring that the victim be "incapable of appraising the nature of the conduct" were limited to the meaning proposed by Cabrera, the disjunctive language in § 2242(1)(B) providing that it is also sexual abuse to engage in a sexual act with a person "physically incapable of declining participation in, or communicating unwillingness to engage in" the sexual act, would be at least partially redundant.  *See South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 347 (1998) (reiterating that courts should avoid interpreting statutes in a way that renders some words altogether redundant).

[13] Cabrera cites cases holding that intoxication does not necessarily invalidate a consent to search.  *See United States v. Watters*, 572 F.3d 479, 483–84 (8th Cir. 1999); *United States v. Scheets*, 188 F.3d 829, 839 (7th Cir. 1999).  These cases are inapposite for at least two reasons.  First, they concern efforts by defendants to use their intoxication as a defense, and

Third, our opinion in *Young* does not support Cabrera's argument. As he notes, we there held that "[w]hen applying the modified categorical approach in the context of a guilty plea, we must determine whether a guilty plea to an offense defined by a nongeneric statute *necessarily admitted* elements of the generic offense." 697 F.3d at 983 (quotation marks omitted). Here, Cabrera acknowledged in his plea statement that his victim, due to intoxication, was "incapable of appraising the nature of the conduct," and thus, he "necessarily admitted" that his state conviction was for sexual abuse, as defined by 18 U.S.C. § 2242. In other words, he chose to admit to an element of the state crime – that his victim did not consent due to her lack of capacity to do so – by confessing to facts that also defined his crime as a sexual offense under federal law. Perhaps he could have been convicted under Oregon law on another basis that might not have satisfied the federal definition of sexual abuse.[14] However, Cabrera chose first to admit to his victim's incapacity to consent in a manner that clearly satisfied the federal definition of sexual abuse. Accordingly, the district court properly determined that he was a Tier III sex offender.

## IV

Cabrera, having been convicted in Oregon of the crime of sexual abuse and having been ordered to register as a sex

---

second, Cabrera in his plea statement admitted that his victim was unable to consent because of her intoxication.

[14] Because we hold that Cabrera's statement that his victim could not consent due to intoxication is sufficient to render him a Tier III sex offender, we need not, and do not, consider whether the victim's young age would meet § 2242's definition of sexual abuse.

offender, chose to travel interstate and failed to register under SORNA. We conclude, as have our sister circuits, that Congress has the authority under the Commerce Clause to enact SORNA and to require Cabrera to register under SORNA as a sex offender. We also conclude that Cabrera's admission in his plea statement that the victim of his sexual abuse was unable to consent because of her intoxication is sufficient, under the modified categorical approach, to render his state conviction a crime of sexual abuse pursuant to 18 U.S.C. § 2242. Accordingly, Cabrera's conviction and sentence are **AFFIRMED**.