**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

ARTURO HUIZAR-VELAZQUEZ,
*Defendant-Appellant*.

No. 11-50237

D.C. No.
3:10-cr-03099-
JAH-1

OPINION

Appeal from the United States District Court
for the Southern District of California
John A. Houston, District Judge, Presiding

Argued and Submitted
October 11, 2012—Pasadena, California

Filed July 2, 2013

Before: Andrew J. Kleinfeld and M. Margaret McKeown,
Circuit Judges, and Gordon J. Quist, District Judge.[*]

Opinion by Judge Kleinfeld

---

[*] The Honorable Gordon J. Quist, District Judge for the United States
District Court for the Western District of Michigan, sitting by designation.

## SUMMARY[**]

### Criminal Law

Vacating a sentence imposed for importing wire hangers without paying the proper duties and remanding, the panel held that the district court erred by applying U.S.S.G. § 2C1.1 (bribery) rather than U.S.S.G. § 2T3.1 (smuggling).

Regarding amount of loss, the panel left to the district court on remand the question of which duty rates apply to which hangers under the proper sentencing guideline. The panel emphasized that the district court cannot merely defer to the government expert witness's calculation.

### COUNSEL

Kenneth J. Troiano (argued), San Diego, California, for Defendant-Appellant.

Timothy C. Perry (argued), Assistant United States Attorney, San Diego, California, for Plaintiff-Appellee.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

KLEINFELD, Senior Circuit Judge:

We address sentencing issues relating to evasion of duties.

## FACTS

Arturo Huizar-Velazquez pleaded guilty to importing wire hangers without paying the proper duties. In 2008, the United States imposed antidumping duties on Chinese steel wire hangers to combat perceived "dumping"[1] in the United States. Wire hangers from exporters who did not apply for and receive separate rates were subject to a "PRC-Wide" rate of 187.25 percent.[2] Huizar-Velazquez evaded these duties by purchasing hangers in China, importing them to the United States for shipment to Mexico, and then repackaging the hangers in Mexico and stamping them "Made in Mexico" so that he could then sell them duty-free in the United States, under the North American Free Trade Agreement.

The 55-count indictment alleged, *inter alia*, conspiracy to defraud the United States by interference with governmental functions[3] and entry of goods by means of false statements.[4]

---

[1] "Dumping" is "the sale or likely sale of goods at less than fair value." 19 U.S.C. § 1677(34).

[2] 73 Fed. Reg. 47,587, 47,591 (Aug. 14, 2008); 73 Fed. Reg. 53,188, 53,189 (Sept. 15, 2008).

[3] 18 U.S.C. § 371.

[4] 18 U.S.C. § 542.

The district court applied Sentencing Guidelines § 2C1.1 and accepted the government's position that Huizar-Velazquez illegally avoided approximately $3.5 million in tax and interest.  The district court sentenced Huizar-Velazquez to 70 months' imprisonment and ordered roughly $3.5 million in restitution and forfeiture of $4.2 million.

## ANALYSIS

### 1.  Choice of Guideline

The district court applied Sentencing Guidelines § 2C1.1, entitled "Offering, Giving, Soliciting, or Receiving a Bribe; Extortion Under Color of Official Right; Fraud Involving the Deprivation of the Intangible Right to Honest Services of Public Officials; *Conspiracy to Defraud by Interference with Governmental Functions*."[5]  This was the wrong guideline to apply.[6]  The official commentary to § 2C1.1 generally addresses corruption of government officials, not evasion of import duties by smugglers trying to fool rather than corrupt government officials.  The only remark in the commentary that, taken out of context, might seem to support the government is "Section 2C1.1 also applies to fraud involving the deprivation of the intangible right to honest services of government officials . . . and *conspiracy to defraud by*

---

[5] U.S.S.G. § 2C1.1 (emphasis added).

[6] We have previously "noted 'an intracircuit conflict as to whether the standard of review for application of the Guidelines to the facts is de novo or abuse of discretion.'" *United States v. Cabrera-Gutierrez*, No. 12-30233, 2013 WL 2378574, at *5 n.8 (9th Cir. June 3, 2013) (quoting *United States v. Swank*, 676 F.3d 919, 921–22 (9th Cir. 2012)).  "[W]e need not resolve this conflict because our conclusion is the same under either standard." *Id.*

*interference with governmental functions* . . . ."[7]   The government urges that any dishonest "interference with governmental functions," whether or not it involves corruption of officials, falls within this guideline.  The next sentence, though, explains that "[s]uch fraud offenses typically involve an *improper use of government influence* that harms the operation of government *in a manner similar to bribery offenses*."[8]   The government's out-of-context, overly general reading is mistaken.

Huizar-Velazquez did not engage in "improper use of government influence," bribery, or extortion, nor did he conspire to do so.  He schemed to trick the government out of its money, not to corrupt government officials.  Stamping "Made in Mexico" on Chinese coat hangers cannot be confused with bribing public officials and is not subject to the same sentencing guideline.  The district court erred by applying § 2C1.1.  Had Huizar-Velazquez bribed Customs and Border Protection ("Customs") agents to let his shipments through, that would be a § 2C1.1 case.  Sneaking shipments past Customs agents to evade duties is not subject to as harsh a punishment as bribing Customs agents.

The district court should have used Sentencing Guidelines § 2T3.1, entitled "Evading Import Duties or Restrictions (Smuggling); Receiving or Trafficking in Smuggled Property."  When more than one guideline section is indicated for violations of the same statute, the General Application Principles of the Guidelines direct the court to select the

---

[7] U.S.S.G. § 2C1.1 Background (emphasis added).

[8] *Id*. (emphasis added).

"most appropriate" guideline.[9]  Where the offense involved a conspiracy, the court should refer to § 2X1.1, as well as the guideline for the substantive offense.[10]  As with most statutes and quasi-statutes, a provision particular to the conduct is usually more appropriate than a broader, more general provision not addressing the particular issue.[11]  Since Huizar-Velazquez's crime was conspiring to evade import duties, the appropriate guideline was the one particularly addressing "evading import duties," not the one addressing bribery of public officials.

The government argues that § 2C1.1 was the proper guideline because it resulted in a greater offense level, and "[w]here two or more guideline provisions appear equally applicable, [the court should] use the provision that results in the greater offense level."[12]  This argument fails because § 2C1.1 (bribery) and § 2T3.1 (smuggling) are not "equally applicable" to smuggling.  They are unequally applicable because one is more appropriate than the other.  Application Note 5 is not a license to shoehorn an offense into an ill-suited sentencing guideline simply because the guideline imposes a longer sentence than a more appropriate guideline.

---

[9] U.S.S.G. § 1B1.2 Application Note 1.

[10] *Id.*

[11] *See United States v. Wenner*, 351 F.3d 969, 975 (9th Cir. 2003) (quoting *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 228–29 (1957)) ("Specific terms prevail over the general in the same or another statute which otherwise might be controlling.").

[12] U.S.S.G. § 1B1.1 Application Note 5.

The district court stated that the offense involved a contraband item specifically covered by another guideline section that would result in a greater offense level, so § 2T3.1 could not apply. That reasoning is incorrect because, as explained above, evading import duties by smuggling wire hangers was not covered by another, more specific guideline section. Nor are wire hangers the type of contraband for which importation is "prohibited or restricted for non-economic reasons" and to which "[o]ther, more specific criminal statutes apply."[13]  Section 2T3.1 is the most specific, appropriate guideline to apply in this case.

Finally, the government argues that the district court's use of the wrong sentencing guideline is harmless error because the judge commented that if he applied § 2T3.1, Huizar-Velazquez would likely qualify for an upward adjustment under § 5K2.7 for "significant disruption of a governmental function."  We disagree.  We cannot know from this statement what the result would have been had the court applied the correct guideline.

## 2.  Amount of Loss

Huizar-Velazquez argues that the district court also erred in calculating the amount of loss under § 2C1.1.  The government's expert witness calculated the loss using a duty rate of 187.25 percent.  The Department of Commerce derived this rate by taking into account normal values and the calculated rates for certain Chinese exporters for which it had significant data.[14]  This duty rate applied to all Chinese wire

---

[13] U.S.S.G. § 2T3.1 Introductory Commentary.

[14] 73 Fed. Reg. 53,188, 53,189 (Sept. 15, 2008).

hanger exporters unless the exporter could sufficiently prove, *inter alia*, that it was independent of the Chinese government and should be subject to a lower rate.[15]  Huizar-Velazquez offered to prove, by invoices, wire transfer documents, and a spreadsheet based on them, that three of the five Chinese companies he bought from were subject to the much lower "antidumping duty" of 55.31 percent.  The government's expert refused  to consider this evidence, justifying her refusal with the explanation that "[i]n cases of fraud such as this one, it is the practice of CBP [Customs and Border Protection] to require more than invoices and documentation of wires to establish the true identity of the manufacturer." The district court accepted the loss calculation made by the government's expert.  Of course, it is the district court, not the government's witness, who has the duty to determine what evidence suffices under the "reasonable estimate"[16] standard of the Sentencing Guidelines to determine amount of loss.[17]

A few weeks before sentencing, unbeknownst to counsel and the court, the duty was retroactively reduced to 1.71 percent for three companies from which Huizar-Velazquez claims to have purchased more than three-quarters of the

---

[15] *See* 74 Fed. Reg. 61,658 (Nov. 25, 2009).

[16] U.S.S.G. § 2T1.1 Application Note 1, § 2B1.1 Application Note 3(C).

[17] *See United States v. Innie*, 7 F.3d 840, 848 (9th Cir. 1993) ("The sentencing court must use its independent judgment to resolve the issues before it."); U.S.S.G. § 2T1.1 Application Note 1 ("[T]he guidelines contemplate that the *court* will simply make a reasonable estimate based on the available facts.") (emphasis added).

hangers.[18]  The government's expert did not tell the district court or counsel about this huge reduction.  She did not testify at sentencing, so she was not subject to cross examination.  Her opinion was set out in a declaration drafted prior to the reduction to 1.71 percent.  She filed a "Second Declaration" subsequent to the reduction to 1.71 percent, but did not mention the change.  In spite of this new 1.71 percent rate and Huizar-Velazquez's supporting documentation justifying the previous 55.31 percent rate for much or most of his duty fraud, the government's expert, and the court, applied the 187.25 percent rate to all of Huizar-Velazquez's shipments.

We review the district court's findings of fact for clear error.[19]  Subsequent to argument, the government filed a "28(j) letter"[20] amounting to a new brief, arguing that Huizar-Velazquez would not be entitled to take advantage of the new, retroactively applicable, far lower rates.  The government argued two different theories for letting the district court's finding of fact stand even though the court was not advised of the new rates.  Because the government's purported 28(j) letter really amounted to a supplemental brief, we invited a response from the defense.  Defense counsel argued that the government's arguments about which rate

---

[18] 76 Fed. Reg. 27,994, 27,997 (May 13, 2011).

[19] *United States v. Treadwell*, 593 F.3d 990, 999 (9th Cir. 2010).

[20] Fed. R. App. P. 28(j) ("If pertinent and significant authorities come to a party's attention after the party's brief has been filed—or after oral argument but before decision—a party may promptly advise the circuit clerk by letter, with a copy to all other parties, setting forth the citations.  The letter must state the reasons for the supplemental citations, referring either to the page of the brief or to a point argued orally. The body of the letter must not exceed 350 words.").

applies ought properly to be raised first before the district court on remand.

We do not resolve the question of which rates apply to which wire hangers, but leave that question for the district court to decide on remand under the proper sentencing guideline. The court below calculated the amount of loss in the context of § 2C1.1. The language of the proper guideline, § 2T3.1, differs. The court must calculate the "tax loss" under § 2T3.1, which simply states "the 'tax loss' is the amount of the duty."[21] The district court "is responsible for making an independent determination as to the amount of loss the victim suffered as a result of the defendant's conduct."[22] The court cannot merely defer to the government expert witness's calculation. The restitution and forfeiture amounts, as well as the sentence, are vacated so that a proper determination can be made in the resentencing.

## CONCLUSION

**VACATED** and **REMANDED** for resentencing.

---

[21] We note that "[t]he government bears the burden of establishing the base offense level, and hence, here, the amount of tax loss, by a preponderance of the evidence." *United States v. Montano*, 250 F.3d 709, 713 (9th Cir. 2001).

[22] *United States v. Najjor*, 255 F.3d 979, 984 (9th Cir. 2001).