Argued and submitted February 21, reversed and remanded August 7, 2013

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JAVIER JUNIOR ROQUEZ,
*Defendant-Appellant.*

Morrow County Circuit Court
10CF012; A148171

308 P3d 250

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jeff J. Payne, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Anna M. Joyce, Solicitor General.

Before Ortega, Presiding Judge, and Sercombe, Judge, and De Muniz, Senior Judge.

DE MUNIZ, S. J.

## DE MUNIZ, S. J.

In this criminal case, we review the trial court's ruling admitting evidence of defendant's prior conviction for sexual abuse. Defendant was charged with one count of first-degree rape, ORS 163.375, one count of first-degree sodomy, ORS 163.405, and two counts of second-degree sexual abuse, ORS 163.425. To prove that the victim, P, had not consented to defendant's sexual advances, the state offered, and the trial court admitted, evidence that, on a prior occasion, defendant had engaged in sexual intercourse with another woman, S, without her consent. The jury found defendant guilty of first-degree sodomy and second-degree sexual abuse, and acquitted him on the first-degree rape and the other second-degree sexual abuse counts. For the reasons that follow, we reverse the judgment of the trial court and remand for further proceedings.[1]

According to P's testimony at trial, defendant and P began a sexual relationship in late April 2010. At the time, both defendant and P were married to other people, and their two families socialized together. On May 14, 2010, defendant and his daughter attended a barbecue at P's home in Kennewick, Washington. P testified that, at the barbecue, defendant was intoxicated and became upset when P's husband acted affectionately toward P. According to P, defendant began punching walls and pounding on the balcony, and, when P's husband was not present, defendant told P that he did not want her husband touching her, that she was "his pussy," and that she was "going * * * nowhere."

The next morning, P drove defendant and his daughter to their home in Irrigon, Oregon. According to P, defendant was agitated during the drive and called P offensive names. P eventually stopped the car at the Irrigon Marina, at which point defendant wanted to have sexual intercourse with P, but P refused because defendant's daughter was in

---

[1] On appeal, defendant raises two other assignments of error. First, he assigns error to the trial court's admission of expert testimony regarding a medical diagnosis of "alleged sexual assault." Second, he argues that the trial court erred in failing to follow the "shift to column I" rule in imposing consecutive sentences for the first-degree sodomy and second-degree sexual abuse convictions. Because we reverse the trial court on the basis that it improperly admitted the "other crimes" evidence, we need not address those arguments.

the car. P testified that defendant continued to call P derogatory names, demanded that P's husband not touch her, and ordered P to say aloud that she "was [defendant's] pussy now." Upon arriving at defendant's home, defendant asked if he could return with P to her home because he wanted to spend the day with her. P was hesitant, because, as she explained, she "wanted nothing to do with him anymore." However, when defendant became angry, P complied with defendant's request.

On the return drive, P attempted to end her relationship with defendant and suggested that they "just go back to [their] families." According to P, she became frightened when defendant threatened to tell their spouses about the affair. She again stopped at the Irrigon Marina and parked the car. P then consented to have sexual intercourse with defendant, believing that, "if [they] did it *** one last time," defendant would not tell her husband about her relationship with defendant. Shortly after they began having sexual intercourse, defendant asked P to "turn around and do it anally." P agreed, but, fearing that it might hurt, she asked, "Once I tell you to stop, will you stop?" Defendant responded, "Yes."

P testified that, almost immediately after they began having anal intercourse, P told defendant to stop, but defendant refused. P attempted to push herself off of him, but defendant "grabbed [her] hands" and "put them on [her] hips," and then "picked [her] up and *** slammed [her] down" on his penis. Defendant "continued to do that," even though P was crying and yelling at him to stop. P scratched defendant and tried to push him away, but defendant did not stop until P eventually lost control of her bowels. At that point, defendant ordered P to turn around and proceeded to have vaginal intercourse with her. According to P, defendant refused to allow her to leave "until he was done."

After defendant completed the act, P asked defendant to leave her car and told him to walk home. Defendant complied, and P left him at the marina. Later, as P was driving home, defendant called her cell phone numerous times. Defendant apologized and explained that he was angry because he knew that that would be "the last time" that they would be together.

P testified that she experienced pain and anal bleeding for "[a] couple of days, almost a week" after the incident. On May 16, 2010, the day after the incident, P told her husband about her affair with defendant, and, the following morning, she reported the incident to the police. On May 18, 2010, P went to the hospital and was examined by Dr. Forsythe. P reported pelvic pain and vaginal and rectal bleeding. Forsythe observed a "small amount of blood * * * near the entrance to the cervix." Based on P's reported symptoms and on the physical evidence, Forsythe diagnosed "alleged sexual assault."

As noted, defendant was indicted on one count of first-degree rape, one count of first-degree sodomy, and two counts of second-degree sexual abuse. Before trial, the state filed a motion *in limine* seeking an order admitting evidence of defendant's 2006 conviction of second-degree sexual abuse, which involved a different victim, S. Specifically, the state argued that S's testimony was admissible to show defendant's knowledge, plan, and lack of consent, and the "lack of mistake or accident regarding the issue of consent." In response, defendant argued that the evidence of the 2006 conviction was inadmissible because it was "not related to the charged case in any way" and, thus, constituted inadmissible character evidence under OEC 404(3).

Following a pretrial hearing on the state's motion, the trial court ruled that evidence of defendant's 2006 conviction was admissible for "the reasons set forth by the state in its motion *in limine.*" In reaching that conclusion, the trial court noted that defendant had pleaded guilty to the second-degree sexual abuse charge and that the events were "similar in nature and not remote in time."

In accordance with that ruling, the trial court admitted into evidence a copy of defendant's 2006 guilty plea to second-degree sexual abuse, and the jury heard testimony from S regarding the incident. Specifically, S testified that she first met defendant on the evening of the incident, which occurred in 2005. At the time, defendant and two women were visiting S and her then-fiancé, defendant's cousin, and drinking at the couple's apartment. Later that evening, S's

fiancé left to walk the two women to their car, leaving defendant and S alone in the apartment. After S's fiancé left the apartment, defendant went to sleep on a bed in the living room, and S went to sleep in her bedroom.

S testified that, shortly thereafter, a male entered her dark bedroom and crawled into bed with her. She assumed that the male was her fiancé, and the two briefly conversed as if this were the case. According to S, the male laid atop of her, and, when he began trying to have sexual intercourse with her, S said, "No, I'm okay." After realizing that it was defendant—not her fiancé—who was on top of her, S yelled at him to get off of her. According to S, defendant held her arms back and her legs open, and proceeded to have sexual intercourse with her. S then "managed to get [her] right leg up to [her] chest into his ribs" but was unable to push him away. At that moment, S's fiancé suddenly appeared in the bedroom doorway, at which point defendant jumped up, grabbed his clothes, and fled the room.

S's fiancé reported the incident to the police, and defendant was charged with first-degree rape, first-degree sexual abuse, and second-degree sexual abuse. S testified that she requested to drop the charges against defendant, because her fiancé did not want her to testify against defendant and defendant's family had offered her a settlement. Nevertheless, the case proceeded, and, in 2006, defendant pleaded guilty to second-degree sexual abuse.

At trial in this case, defendant, for his part, did not dispute that he had engaged in sexual intercourse with P. Rather, defendant maintained that P had consented to the sexual activity. The trial court instructed the jurors that they could consider evidence of defendant's 2006 conviction to determine whether defendant "acted with knowledge as to the alleged criminal conduct" or whether his conduct "was mistaken or accidental." Additionally, the trial court instructed the jurors "not to draw the inference that the evidence of the other conduct makes the Defendant guilty of the charges in this case." As noted, the jury found defendant guilty of first-degree sodomy and second-degree sexual abuse, and this appeal ensued.

On appeal, defendant challenges the trial court's admission of the evidence relating to his 2006 conviction of sexual abuse. He argues that that "other crimes" evidence is inadmissible under OEC 404(3) because its relevance derives from an impermissible inference about defendant's character—*i.e.*, that defendant has a propensity to sexually abuse women and that he acted in conformity with that propensity in committing the charged acts against P. We review a trial court's ruling on whether evidence is admissible under OEC 404(3) for errors of law. *State v. Berg*, 223 Or App 387, 396, 196 P3d 547 (2008), *adh'd to as modified on recons*, 228 Or App 754, 208 P3d 1006, *rev den*, 346 Or 361 (2009).

We begin with the text of OEC 404(3), which governs the admissibility of other crimes evidence. That rule provides, in part, "Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith." OEC 404(3). As applied to this case, OEC 404(3) bars the admission of evidence that is offered to prove that, because defendant committed sexual abuse on a prior occasion, his character is such that he later would act in the same manner and commit the charged acts.

However, OEC 404(3) does not prohibit the state from offering "other crimes, wrongs or acts" evidence for a legitimate, noncharacter purpose, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *See also State v. Johns*, 301 Or 535, 548, 725 P2d 312 (1986) (OEC 404(3) is an inclusionary, not exclusionary, rule). Here, the state argues that the other crimes evidence was admissible to prove (1) defendant's intent to commit the charged acts and (2) P's lack of consent to defendant's sexual contact.[2] We address each of those arguments in turn.

As to the state's first argument, the state explains that the evidence relating to the 2006 conviction was relevant

---

[2] As noted, in its motion *in limine*, the state argued that the other crimes evidence was admissible to prove defendant's knowledge, plan, and lack of consent, and the "lack of mistake or accident regarding the issue of consent." Because the state does not specifically raise on appeal the issues of knowledge or plan, we do not consider them.

to prove defendant's intent, which was at issue because the state was required to prove "forcible compulsion" on the first-degree sodomy count and P's lack of consent on the second-degree sexual abuse count.[3] Stated differently, in the state's view, the 2006 conviction involving S was relevant to prove, with regard to the incident involving P, that defendant intended to act by forcible compulsion and that P did not consent to the sexual contact.

Thus, according to the state, under the multi-factor test set out in *Johns*,[4] the similarity between the 2006 offense and the charged offenses was sufficient to render the other crimes evidence relevant to prove defendant's intent. Applying the *Johns* test, the state reasons that the 2006 offense and charged offenses require proof of intent; S and P are in the same class of victims in that defendant knew both victims, was aware that they were in relationships with other men, and socialized with them before he assaulted them; the type of prior act is the same as the acts involved in the charged offenses; and the physical elements of the 2006 offense and the charged offenses are similar because defendant had been drinking heavily before both incidents and, "when the women tried to get him to stop, he used his strength and size to overcome their resistance." For the reasons that follow, we disagree.

---

[3] On the first-degree sodomy count, the state charged that defendant "did unlawfully and knowingly by forcible compulsion, engage in deviate sexual intercourse" with the victim. As to the second-degree sexual abuse count, the state charged that defendant "did unlawfully and knowingly subject [the victim] to sexual intercourse, the [victim] not consenting thereto."

[4] The court in *Johns* set out six factors that the trial court should consider in evaluating "other crimes, wrongs or acts" evidence in relation to the issue of intent:

"(1) Does the present charged act require proof of intent?

"(2) Did the prior act require intent?

"(3) Was the victim in the prior act the same victim or in the same class as the victim in the present case?

"(4) Was the type of prior act the same or similar to the acts involved in the charged crime?

"(5) Were the physical elements of the prior act and the present act similar?

"(6) If these criteria are met, is the probative value of the prior act evidence substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury, undue delay or presentation of cumulative evidence?"

301 Or at 555-56.

The state's argument relies on the proposition that a single instance of prior misconduct is relevant to prove defendant's intent to engage in forcibly compelled sexual intercourse. Notably, however, the Supreme Court recently rejected a similar argument in *State v. Leistiko*, 352 Or 172, 282 P3d 857, *adh'd to as modified on recons*, 352 Or 622, 292 P3d 522 (2012). In that case, the defendant was charged with three counts of first-degree rape, each of which involved a different victim. To rebut the defendant's defense of consent, the state offered, and the trial court admitted, evidence that the defendant had engaged in sexual intercourse by forcible compulsion with a fourth woman. *Id.* at 174. The state argued that, *inter alia*, the uncharged misconduct involving the fourth woman was sufficiently relevant to prove his intent to forcibly compel one of the victims to engage in sexual intercourse with him. *Id.* at 185.

The *Leistiko* court noted that the relevance of "other crimes, wrongs or acts" evidence to prove intent is based on the "doctrine of chances," which holds that "the more often [a] defendant performs the *actus reus*, the smaller is the likelihood that the defendant acted with an innocent state of mind." *Id.* at 182 (quoting *Johns*, 301 Or at 552) (brackets in *Leistiko*). In concluding that the trial court erred in admitting the fourth woman's testimony, the court discerned two errors in the state's argument.

First, the court explained that the state could not invoke the doctrine of chances, because it had failed to show that one of two conditions had been satisfied:

"[T]he defendant either concedes the act that requires proof of a mental state or the trial court instructs the jury not to consider uncharged misconduct evidence offered to prove intent unless and until the jury finds the act that requires proof of intent to have been done and is proceeding to determine intent."

*Id.* at 185 (citing John Henry Wigmore, 2 *Evidence* § 302, 245 (Chadbourne rev 1979)). Admitting other crimes evidence "in the absence of one of those conditions poses * * * an unacceptable risk that the uncharged misconduct evidence is being admitted to prove the act, not the defendant's mental state." *Id.* at 186.

Here, as in *Leistiko*, neither of those conditions was met. Like the defendant in *Leistiko*, defendant never conceded that he forcibly compelled P to engage in intercourse with him or that he had intercourse with her without her consent. Rather, defendant argued that P had consented to the sexual activity. Further, the trial court did not admit the other crimes evidence as conditionally relevant, nor did it instruct the jurors to consider that evidence on the issue of intent only if they first found that defendant had engaged in sexual intercourse with P by forcible compulsion or without her consent.

Second, the *Leistiko* court noted, "[a]lthough this court recognized in *Johns* that 'sometimes one prior similar act will be sufficiently relevant for admissibility,' it cautioned that whether one prior similar act will suffice '[d]epend[s] upon the circumstances[.]'" *Id.* (quoting *Johns*, 301 Or at 555) (second, third, and fourth brackets in *Leistiko*). Further, "a simple, unremarkable single instance of prior conduct probably will not qualify, but a complex act requiring several steps, particularly premeditated, may well qualify." *Id.* (internal quotation marks and brackets omitted). With that in mind, the court determined that "[t]he fact that [the] defendant resorted to force when a woman resisted his advances is not a complex factual scenario." *Id.* In other words, "the prior act in this case is not the sort of single 'complex act requiring several steps, particularly premeditated,' that will suffice to establish intent under the doctrine of chances." *Id.* (footnote omitted).

That same reasoning applies in this case. The incident involving S does not involve a "complex factual scenario" requiring several steps. S's testimony established that, on the evening that S met defendant, he sexually assaulted S, and, despite S's physical resistance and protestation, he proceeded to have sexual intercourse with her. It strains credulity to characterize that incident as anything more than a "simple, unremarkable single instance of prior conduct," in which defendant, approximately five years before the charged conduct, engaged in sexual intercourse with another woman without her consent. Indeed, as defendant argues, unwanted sexual contact is a feature common to

all sexual assaults. Accordingly, the prior act involved in the 2006 conviction is not sufficiently similar to the acts involved in the charged offenses to establish intent under the doctrine of chances.

The state's second argument—that S's lack of consent was relevant to prove P's lack of consent—is as unavailing as its first argument. The state contends that the two events were similar, in that both victims physically resisted defendant's advances. Therefore, according to the state, S's testimony, which established that S had not consented to sexual contact with defendant, was relevant to refute defendant's theory that P consented to his sexual advances.

Indeed, the *Leistiko* court rejected a similar argument, and, in doing so, it noted, "The fact * * * that one woman consented (or refused to consent) to have sexual relations with [the] defendant does not mean that another woman made the same choice." *Id.* at 181 (citing *Lovely v. United States*, 169 F2d 386, 390 (4th Cir 1948)). The court explained, "In that context, there are too many independent variables for one victim's state of mind to be relevant to prove another's." *Id.* Thus, applying that proposition here, we cannot conclude that S's decision not to consent to sexual contact with defendant was relevant to prove that P had made the same choice.

We conclude that the trial court should have excluded the other crimes evidence involving S, because the evidence was insufficient to establish defendant's intent or P's lack of consent under OEC 404(3).

Reversed and remanded.