**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 12-30233 |
| v. | D.C. No. 2:12-cr-02027-WFN-1 |
| PEDRO CABRERA-GUTIERREZ, *Defendant-Appellant*. | ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Eastern District of Washington
Wm. Fremming Nielsen, Senior District Judge, Presiding

Argued and Submitted
April 11, 2013—Seattle, Washington

Filed June 3, 2013
Amended March 17, 2014

Before: A. Wallace Tashima and Consuelo M. Callahan,
Circuit Judges, and Raner C. Collins, District Judge.[*]

Order;
Opinion by Judge Tashima;
Partial Concurrence and Partial Dissent by Judge Callahan

---

[*] The Honorable Raner C. Collins, Chief United States Judge for the District of Arizona, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel granted a petition for panel rehearing, withdrew an Opinion filed June 3, 2013, filed an Amended Opinion and concurring and dissenting opinion, and denied a petition for rehearing en banc as moot, in a case in which the defendant was convicted of failing to register under the Sex Offender Registration and Nationality Act.

In the Amended Opinion, the panel affirmed the conviction, but vacated the sentence and remanded for resentencing.

The panel held that Congress has authority under the Commerce Clause to compel the defendant, a convicted sex offender who traveled interstate, to register under SORNA as a sex offender.

The panel held that the district court erred in sentencing the defendant as a Tier III sex offender under 42 U.S.C. § 16911(4) based on his prior conviction of second degree sexual abuse under Or. Rev. Stat. § 163.425. Applying the categorical approach, the panel held that § 163.425 is broader than the federal crime of sexual abuse. The panel held that § 163.425 is not divisible within the meaning of the Supreme Court's decision in *Descamps v. United States*, and that application of the modified categorical approach is therefore precluded.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel instructed the district court to consider on remand whether the defendant should receive a third level of reduction for acceptance of responsibility in light of the November 1, 2013, amendment to U.S.S.G. § 3E1.1(b).

Judge Callahan concurred and dissented. She agreed that Congress had the authority to enact SORNA and that SORNA's application to the defendant is constitutional. Because she reads the relevant Oregon statutes to be "divisible" as defined in *Descamps*, she would hold that the district court properly sentenced the defendant as a Tier III sex offender.

## COUNSEL

Rebecca L. Pennell, Federal Defenders of Eastern Washington & Idaho, Yakima, Washington, for Defendant-Appellant.

Michael C. Ormsby, United States Attorney, and Alison L. Gregoire (argued), Assistant United States Attorney, Yakima, Washington, for Plaintiff-Appellee.

**ORDER**

Defendant-Appellant's petition for panel rehearing is granted. The Opinion, filed June 3, 2013, and reported at 718 F.3d 873, is withdrawn and replaced by the Amended Opinion and concurring and dissenting opinion filed concurrently with this Order. The petition for rehearing en banc is denied as moot. Further petitions for panel rehearing and/or rehearing en banc may be filed with respect to the Amended Opinion.

---

**OPINION**

TASHIMA, Circuit Judge:

Our original Opinion was filed on June 3, 2013. *See United States v. Cabrera-Gutierrez*, 718 F.3d 873 (9th Cir. 2013). Shortly thereafter, on June 20, 2013, the Supreme Court decided *Descamps v. United States*, 133 S. Ct. 2776 (2013), which worked a substantial change in sentencing law. We therefore granted the petition for panel rehearing and withdrew our Opinion. We now affirm the conviction, but vacate the sentence and remand for resentencing.

Pedro Cabrera-Gutierrez ("Cabrera") appeals his conviction and sentence for failing to register under the Sex Offender Registration and Notification Act ("SORNA"). On appeal he advances two arguments. First, he contends that Congress lacked authority under the Commerce Clause to compel his registration as a sex offender. Second, he contends that the district court erred in sentencing him as a

Tier III sex offender based on his prior conviction of second degree sexual abuse.[1]

We reject Cabrera's first argument, but agree with his second. We hold that Congress has authority under the Commerce Clause to compel Cabrera, a convicted sex offender who traveled interstate, to register under SORNA. But, following the Supreme Court's recent decision in *Descamps*, we hold that the district court erred when it applied the modified categorical approach in sentencing Cabrera as a Tier III sex offender. *Descamps* precludes application of the modified categorical approach in this case.

## I.

Cabrera was born in Mexico and has been removed from the United States several times. In 1998, Cabrera was

---

[1] Cabrera raises a third issue: whether the government improperly denied him a third level of reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b). While our precedents foreclosed Cabrera's contention at the time of our original Opinion, *see United States v. Johnson*, 581 F.3d 994, 1001 (9th Cir. 2009), § 3E1.1 was amended, effective November 1, 2013, to clarify that "the government should not withhold . . . a motion [for reduction for acceptance of responsibility] based on interests not identified in § 3E1.1, such as whether the defendant agrees to waive his or her right to appeal." U.S.S.G. § 3E1.1, comment n.6. This amendment applies to this case. *See United States v. Catalan*, 701 F.3d 331, 333 (9th Cir. 2012) ("When an amendment to the Guidelines clarifies, rather than alters, existing law, we use the amendment to interpret the Guidelines provision retroactively."). Because we vacate Cabrera's sentence and remand for resentencing based on Cabrera's erroneous classification as a Tier III offender, *see infra*, we need not consider the effect of this amendment. The district court, however, should consider on remand whether Cabrera should receive a third level of reduction for acceptance of responsibility in light of this amendment.

convicted in Oregon of second degree sexual abuse. In his guilty plea statement, Cabrera admitted:

> I on May 2, 1998 did knowingly have sexual intercourse with [redacted] and she was unable to legally consent to having sexual intercourse with me because she was under the influence of alcohol at the time of the sexual intercourse. Further [redacted] was 15 years old on May 2, 1998.

Cabrera was sentenced to 36 months' imprisonment and required to register as a sex offender. When Cabrera was released from custody in September 2000, he was advised of his responsibility to register as a sex offender under Oregon law and promptly removed to Mexico.

On February 3, 2012, Cabrera was arrested for a traffic violation in Yakima, Washington. He was subsequently charged with failing to register as a sex offender in violation of 18 U.S.C. § 2250. The indictment alleged that Cabrera was an individual who was required to register under SORNA, and having traveled in interstate commerce, did knowingly fail to register in violation of 18 U.S.C. § 2250. It further alleged that Cabrera failed to meet his registration obligation during the period February 3, 2011, through February 3, 2012.

Cabrera filed a motion to dismiss the indictment, arguing that Congress lacked authority to require him to register as a sex offender. The district court denied the motion, noting that although *United States v. George*, 625 F.3d 1124 (9th Cir. 2010), had been vacated, 672 F.3d 1126 (9th Cir. 2012), "the Court finds the reasoning in *George* persuasive and notes that

the opinion was vacated on different grounds." Thereafter, Cabrera entered a conditional plea of guilty, preserving his right to appeal the denial of his motion to dismiss.

The Pre-Sentence Investigation Report ("PSR") listed Cabrera's offense level as 16 under U.S.S.G. § 2A3.5(a)(1) because he was required to register as a Tier III sex offender. Cabrera objected to the PSR. He argued that his prior conviction only qualified him as a Tier I sex offender, not a Tier III offender, because his Oregon conviction was not comparable to, or more severe than, "aggravated sexual abuse or sexual abuse," as defined in 42 U.S.C. § 16911. The district court rejected this argument, noting that Cabrera's guilty plea admitted that the girl was intoxicated and fifteen years old. The court sentenced Cabrera to seventeen months' imprisonment and three years' supervised release. Cabrera timely appeals from his conviction and sentence.

## II.

We review the district court's denial of Cabrera's motion to dismiss the indictment *de novo.* *United States. v. Milovanovic*, 678 F.3d 713, 719–20 (9th Cir. 2012) (en banc); *United States v. Marks*, 379 F.3d 1114, 1116 (9th Cir. 2004).

SORNA requires sex offenders to, among other things, register their names, addresses, employment or school information, update that information, and appear in person at least once a year for verification of the information. 42 U.S.C. § 16901 *et seq.* These obligations, Cabrera asserts, are an unconstitutional regulation of his inactivity under the Supreme Court's recent opinion in *National Federation of Independent Business v. Sebelius*, 132 S. Ct. 2566 (2012). Cabrera accepts that Congress has broad powers under the

Commerce Clause, but points out that in *Sebelius*, the Court stated that "[c]onstruing the Commerce Clause to permit Congress to regulate individuals precisely *because* they are doing nothing would open a new and potentially vast domain to congressional authority." *Id*. at 2587. Cabrera further argues that, unlike the Affordable Care Act at issue in *Sebelius*, SORNA has nothing to do with commerce. Its purpose is to "protect the public from sex offenders and offenders against children." 42 U.S.C. § 16901. He argues that this purpose, while laudable, is not an appropriate purpose under the Commerce Clause because public safety measures lie exclusively in the realm of the States.

In anticipation of the government's reliance on "an additional jurisdictional hook," such as travel across state lines, Cabrera argues that SORNA requires all sex offenders to register, regardless of travel, and that the duty to register under SORNA precedes any act of travel. Thus, he continues, "SORNA would hold an individual who fails to register, travels and then registers equally responsible as an individual who never registers, before or after travel." He argues, citing *Sebelius*, 132 S. Ct. at 2590, that "the proposition that Congress may dictate conduct of an individual today [i.e., registering as a sex offender] because of prophesied future activity [i.e., interstate travel] finds no support in [the applicable Commerce Clause] precedent." Cabrera concludes that because Congress lacks the power to require an individual to register as a sex offender, it follows that it cannot penalize him for failing to register, even if he has traveled in interstate commerce.

We are not persuaded. In *United States v. Lopez*, 514 U.S. 549 (1995), the Supreme Court recognized Congress's "broad" power under the Commerce Clause to

regulate:    (1) "the use of the channels of interstate commerce"; (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities"; and (3) "those activities having a substantial relation to interstate commerce."    *Id.* at 558–59 (citations omitted).    The government asserts that the requirement of interstate travel meets "the first two categories of Congress' Commerce Clause authority, because an interstate traveler is both a person "in interstate commerce" and one who uses the "channels of interstate commerce."

We held in *George*, 625 F.3d at 1130, *vacated on other grounds*, 672 F.3d 1126, that "Congress had the power under its broad commerce clause authority to enact the SORNA," and we now reaffirm that holding, which has been embraced by our fellow circuits.  In *George*, we explained:

> SORNA was enacted to keep track of sex offenders.    *See Carr v. United States*, 560 U.S. 438, 455 (2010) ("[SORNA was] enacted to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks.").    Such offenders are required to "register, and keep registration current, in each jurisdiction" where the offender lives, works, or goes to school. 42 U.S.C. § 16913(a).  As stated by the Eighth Circuit, "[t]his language indicates Congress wanted registration to track the movement of sex offenders through different jurisdictions." *United States v. Howell*, 552 F.3d 709, 716 (8th Cir. 2009).  "Under § 2250, Congress limited the enforcement of the registration

requirement to only those sex offenders who were either convicted of a federal sex offense or who move in interstate commerce." *Id.* (citing 18 U.S.C. § 2250(a)(2)). The requirements of § 16913 are reasonably aimed at "regulating persons or things in interstate commerce and the use of the channels of interstate commerce." *Id.* at 717 (quoting [*United States v.*] *May*, 535 F.3d [912,] 921 [(8th Cir. 2008)]) (quotation marks omitted).

625 F.3d at 1129–30 (emendations, except in the last sentence, in the original).

*George* noted that, in addition to the Eighth Circuit, the Fourth, Fifth, Tenth, and Eleventh Circuits had upheld SORNA's constitutionality under the Commerce Clause.[2] *Id.* at 1130. The Second Circuit has also affirmed the

---

[2] *See United States v. Gould*, 568 F.3d 459, 471 (4th Cir. 2009) (holding "that § 2250(a) does not violate the Commerce Clause"); *United States v. Whaley*, 577 F.3d 254, 258 (5th Cir. 2009) ("Through § 2250, Congress has forbidden sex offenders from using the channels of interstate commerce to evade their registration requirements, and we have no doubt that it was within its power under the Commerce Clause to do so."); *United States v. Hinckley*, 550 F.3d 926, 940 (10th Cir. 2008) ("By requiring that a sex offender travel in interstate commerce before finding a registration violation, SORNA remains well within the constitutional boundaries of the Commerce Clause."), *abrogated on other grounds by Reynolds v. United States*, 132 S. Ct. 975, 978 (2012); *United States v. Ambert*, 561 F.3d 1202, 1210 (11th Cir. 2009) ("Section 2250 is a proper regulation falling under either of the first two *Lopez* categories because it regulates both the use of channels of interstate commerce and the instrumentalities of interstate commerce.").

constitutionality of SORNA under the Commerce Clause.[3] In at least two extant opinions, we have approvingly referenced *George*.[4]   Moreover, the Supreme Court's opinions in *Reynolds v. United States*, 132 S. Ct. 975 (2012), and *Carr v. United States*, 560 U.S. 428 (2010), affirming but limiting SORNA, implicitly affirm SORNA's constitutionality.

We recognize, as Cabrera observes, that only SORNA's penalty provision, 18 U.S.C. § 2250, and not its registration provision, 42 U.S.C. § 16913, contains an interstate travel requirement.  But we reject the significance of the distinction for several reasons.  First, because Cabrera was charged and convicted of failing to register *after* having traveled in interstate commerce, it is questionable whether he may properly challenge the duty to register without interstate travel.  More importantly, such a parsing of SORNA has been rejected by the Supreme Court and the circuit courts that have considered the issue.  In *Carr*, the Court explained that "Section 2250 is not a stand-alone response to the problem of missing sex offenders; it is embedded in a broader statutory scheme enacted to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks." 560 U.S. at 455 (citation omitted).  The Seventh Circuit explained the symbiotic relationship between the two sections

---

[3] *See United States v. Guzman*, 591 F.3d 83, 90 (2d Cir. 2010) ("We have no difficulty concluding that § 2250(a) is a proper congressional exercise of the commerce power under *Lopez*.").

[4] *See United States v. Fernandes*, 636 F.3d 1254, 1256 n.2 (9th Cir. 2011) (per curiam) (noting the argument that SORNA "is an invalid exercise of Congress' power under the Commerce Clause was rejected by this court" in *George*); *United States v. Valverde*, 628 F.3d 1159, 1161 (9th Cir. 2010) (noting that *George*'s holding of constitutionality was binding).

in *United States v. Sanders*, 622 F.3d 779, 783 (7th Cir. 2010), stating:

> [S]ection 16913 cannot be divorced from section 2250 in evaluating whether the Commerce Clause gives Congress the authority to require anyone convicted of a sex offense to register.  Imposing a duty to register as a matter of federal law would do little to solve the problem of sex offenders slipping through the cracks absent the enforcement mechanism supplied by section 2250.  Interstate travel by a sex offender is not merely a jurisdictional hook but a critical part of the problem that Congress was attempting to solve, for whenever sex offenders cross state lines they tend to evade the ability of any individual state to track them and thereby "threaten the efficacy of the statutory scheme . . . ." [*Carr*, 130 S. Ct.] at 2239; *see also id.* at 2238 (it was reasonable for Congress to give States primary responsibility to supervise and ensure compliance among state sex offenders and subject such offenders to federal criminal liability only when "they use the channels of interstate commerce in evading a State's reach"); *id.* at 2240 (act of travel by sex offender is not merely a jurisdictional predicate but is "the very conduct at which Congress took aim"); *id.* at 2241 (section 2250 "subject[s] to federal prosecution sex offenders who elude SORNA's registration requirements by traveling in interstate commerce").

The Second, Fifth, Eighth, and Eleventh Circuits are in accord.[5]    Because SORNA's registration requirement is necessary to the effectuation of the broader SORNA scheme, we agree with our sister circuits[6] in concluding that the

---

[5] *See Guzman*, 591 F.3d at 90 ("Sections 2250 and 16913 were enacted as part of the Adam Walsh Child Protection and Safety Act of 2006, and are clearly complementary . . . ." (internal quotation mark omitted)); *Whaley*, 577 F.3d at 259 (same); *United States v. Howell*, 552 F.3d 709, 716 (8th Cir. 2009) ("[T]he statutory scheme Congress created to enforce § 16913 demonstrates Congress was focused on the interstate movement of sex offenders, not the intrastate activity of sex offenders."); *Ambert*, 561 F.3d at 1212 (commenting that "an examination of § 16913 and § 2250 makes the interstate focus abundantly clear," and "the only federal enforcement provision against individuals is found in § 2250, which explicitly subjects state sex offenders to federal prosecution under SORNA only if they travel in interstate or foreign commerce and fail to register under § 16913" (internal quotation marks and emphasis omitted)).

[6] *See Guzman*, 591 F.3d at 91 (stating "[t]o the extent that § 16913 regulates solely intrastate activity, its means are reasonably adapted to the attainment of a legitimate end under the commerce power" (internal quotation marks omitted)); *United States v. Pendleton*, 636 F.3d 78, 88 (3d Cir. 2011) (holding that "§ 16913 is a law made in pursuance of the constitution because it is necessary and proper for carrying into execution Congress's power under the Commerce Clause" (internal quotation marks and citations omitted)); *Gould*, 568 F.3d at 475 (stating "[r]equiring all sex offenders to register is an integral part of Congress' regulatory effort and the regulatory scheme could be undercut unless the intrastate activity were regulated" (internal quotation marks omitted)); *Whaley*, 577 F.3d at 261 (concluding that "requiring sex offenders to register both before and after they travel in interstate commerce . . . is 'reasonably adapted' to the goal of ensuring that sex offenders register and update previous registrations when moving among jurisdictions"); *United States v. Vasquez*, 611 F.3d 325, 331 (7th Cir. 2010) (holding that "[t]o the extent that § 16913 regulates solely intrastate activity, the regulatory means chosen are reasonably adapted to the attainment of a legitimate end under the commerce power" (internal quotation marks omitted)); *Ambert*, 561 F.3d

Necessary and Proper Clause provided Congress ample authority to enact § 16913 and to punish a state sex offender who, like Cabrera, traveled interstate, for failing to register. *Cf. United States v. Kebodeaux*, 133 S. Ct. 2496, 2502–05 (2013) (holding that the Necessary and Proper Clause enabled SORNA's application to a pre-enactment federal offender); *United States v. Elk Shoulder*, 738 F.3d 948, 958–59 (9th Cir. 2013) (same).

Finally, unlike *Sebelius*, SORNA does not regulate individuals "precisely because they are doing nothing." 132 S. Ct. at 2587. SORNA applies only to individuals who have been convicted of a sexual offense. Thus, registration is required only of those individuals who, through being criminally charged and convicted, have placed themselves in a category of persons who pose a specific danger to society. Moreover, SORNA's application to Cabrera is based on his further admitted activities of traveling in interstate commerce and then failing to register. Thus, SORNA does not punish the type of inactivity addressed in *Sebelius*.

In sum, agreeing with our sister circuits, we see no reason to depart from our previously expressed reasoning in *George*. We thus conclude that Congress had the authority to enact SORNA and that SORNA's application to Cabrera is constitutional.

## III.

In considering Cabrera's challenge to his sentence, we review a district court's interpretation of the Sentencing

at 1212 ("Section 16913 is reasonably adapted to the attainment of a legitimate end under the commerce clause.").

Guidelines *de novo*, and its factual findings for clear error. *United States v. Swank*, 676 F.3d 919, 921 (9th Cir. 2012); *United States v. Laurienti*, 611 F.3d 530, 551–52 (9th Cir. 2010).[7]

## A.

As applied to Cabrera's situation, 42 U.S.C. § 16911(4) defines a "tier III sex offender" as "a sex offender whose offense is punishable by imprisonment for more than 1 year and . . . is comparable to or more severe than . . . aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18)."[8]  Section 2242 defines the crime of

---

[7] We have noted "an intracircuit conflict as to whether the standard of review for application of the Guidelines to the facts is de novo or abuse of discretion." *Swank*, 676 F.3d at 921–22.  As in those cases, however, we need not resolve this conflict because our conclusion is the same under either standard.  *See id.* at 922; *Laurienti*, 611 F.3d at 552.

[8] 42 U.S.C. § 16911(4) defines a Tier III offender as follows:

> The term "tier III sex offender" means a sex offender whose offense is punishable by imprisonment for more than 1 year and –
>
> > (A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:
> >
> > > (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18); or
> > >
> > > (ii) abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years;

sexual abuse to include knowingly (1) causing another to engage in a sexual act "by threatening or placing that person in fear," or (2) engaging in a sexual act with another who is "(A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act."**[9]**

---

(B) involves kidnapping of a minor (unless committed by a parent or guardian); or

(C) occurs after the offender becomes a tier II sex offender.

**[9]** 18 U.S.C. § 2242 reads:

Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly –

(1) causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping); or

(2) engages in a sexual act with another person if that other person is–

(A) incapable of appraising the nature of the conduct; or

(B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;

The Oregon statute under which Cabrera was convicted provided:

> A person commits the crime of sexual abuse in the second degree when that person subjects another person to sexual intercourse, deviate sexual intercourse or, [with certain exceptions], penetration of the vagina, anus or penis with any object not a part of the actor's body, and the victim does not consent thereto.

Or. Rev. Stat. § 163.425 (1998).

## B.

Our task is to determine whether Cabrera's prior state conviction under § 163.425 may properly serve as a predicate for his classification as a Tier III sex offender under 42 U.S.C. § 16911(4). That is, we must decide whether the conviction is "comparable to or more severe than" the federal crime of sexual abuse.

In making this comparison, we follow the categorical approach established in *Taylor v. United States*, 495 U.S. 575 (1990), as recently refined in *Descamps*.[10] Under that approach, a sentencing court must begin by comparing the statutory definition of the prior offense with the elements of

---

> or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

[10] *Descamps* applies to this case because the Supreme Court issued its opinion while this case was still "pending direct review [and] not yet final." *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987).

the "generic" federal offense specified as a sentencing predicate. *Descamps*, 133 S. Ct. at 2283 (quoting *Taylor*, 495 U.S. at 599–600). The prior conviction may operate as a predicate if it is defined more narrowly than, or has the same elements as, the generic federal crime. *Id.* If, however, the statute defining the prior offense "sweeps more broadly than the generic crime," the prior offense cannot serve as a statutory predicate. *Id.* *Descamps* affirms that the "key" to this comparison is "elements, not facts." *Id.* A sentencing court may not consult "extra-statutory materials," *id.* at 2287, "even if [the materials show that] the defendant actually committed the [predicate] offense in its generic form," *id.* at 2283. The crime's elements are all that is relevant. *Id.*

Applying the categorical approach, we conclude that the statute of Cabrera's conviction, Or. Rev. Stat. § 163.425, is broader than the federal crime of sexual abuse.[11] The Oregon statute requires the subjection of another to certain types of sexual activity and "the victim does not consent thereto." Or. Rev. Stat. § 163.425(1). The statute's non-consent element applies broadly, both where a victim does not actually consent and where the victim lacks capacity to consent. *See State v. Ofodrinwa*, 300 P.3d 154, 167 (Or. 2013) (en banc).

By contrast, the generic federal crime of sexual abuse requires that a defendant cause another to engage in a sexual act by certain types of threat or fear or to engage in a sexual act with a victim who is mentally or physically incapable. 18 U.S.C. § 2242. The Oregon statute, therefore, penalizes a broader class of behavior than the federal statute. Non-consensual intercourse with a mentally and physically

---

[11] The government concedes as much in its briefing, as does the partial dissent. *See* Partial Dissent at 31.

capable individual not involving a threat or the use of fear might violate Or. Rev. Stat. § 163.425, but it would not violate 18 U.S.C. § 2242.

Oregon and federal law also diverge on the age at which an individual gains legal capacity to consent to a sexual act. *Compare* Or. Rev. Stat. § 163.315 (stating that anyone under eighteen years of age is legally incapable of consent), *with United States v. Acosta-Chavez*, 727 F.3d 903, 908–09 (9th Cir. 2013) (recognizing that federal law defines a minor as someone under sixteen years of age). Thus, sexual intercourse with a person under eighteen, but not under sixteen, would violate Or. Rev. Stat. § 163.425, but not necessarily 18 U.S.C. § 2242. In this respect also, § 163.425 sweeps more broadly than § 2242.

Because Or. Rev. Stat. § 163.425 "sweeps more broadly" than 18 U.S.C. § 2242, Cabrera's statute of conviction is not a categorical match to the federal crime of sexual abuse. Absent an exception to this categorical rule, Cabrera's prior conviction cannot serve as a predicate for his classification as a Tier III sex offender under 42 U.S.C. § 16911(4).

## C.

The government contends that such an exception applies in this case. *Taylor* and *Descamps* recognize that, in a "narrow range of cases," courts may look beyond the statutory definition of a prior offense to certain other documents, including a defendant's plea agreement. *Descamps*, 133 S. Ct. at 2283–84 (quoting *Taylor*, 495 U.S. at 602). Cabrera admitted in his plea statement that the victim of his crime was both intoxicated and a minor. The district court relied on those admissions in determining that

Cabrera committed a crime "comparable to or more severe than" sexual abuse and that Cabrera qualified as a Tier III offender.

While our previous case law might have permitted the district court's approach – known as the "modified categorical approach" – in this case, we conclude that *Descamps* now forecloses it. *Descamps* clarifies that the modified categorical approach is available only when a defendant is convicted of violating a statute that sets out multiple, "divisible" elements. *Id.* at 2281, 2285. In such cases, the statute "effectively creates 'several different . . . crimes'" pertaining to the possible combinations of alternative elements. *Id.* (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)). Thus, a sentencing court may consult certain extra-statutory materials to identify the defendant's actual crime of conviction and to compare the elements of that crime with the generic crime. *Id.* at 2284–85. Where, however, a statute states a single, indivisible set of elements, the modified categorical approach "has no role to play." *Id.* In such cases, the sentencing court need not – indeed, cannot – consult extra-statutory materials to determine "which crime formed the basis of the defendant's conviction," *id.* at 2284, because only the single set of indivisible elements could apply.

We hold that Or. Rev. Stat. § 163.425 is not divisible within the meaning of *Descamps*. The statute, by its terms, states only two elements: (1) the subjection of another to certain types of sexual activity and (2) non-consent. These elements are indivisible, not alternative; a conviction under § 163.425 requires that both elements are satisfied. As in *Descamps*, then, "[w]e know [Cabrera's] crime of conviction" – the subjection of another to intercourse without

that person's consent – and the modified approach has "no role to play." *Descamps*, 133 S. Ct. at 2285–86.

In support of its position that § 163.425 states divisible elements, the government points to Or. Rev. Stat. § 163.315, which lists four types of legal incapacity to consent. Or. Rev. Stat. § 163.315 (1998) (stating that a person is incapable of consenting if that person is under eighteen years of age, mentally defective, mentally incapacitated, or physically helpless); *see also United States v. Beltran-Munguia*, 489 F.3d 1042, 1045 (9th Cir. 2007). The government contends that the listing of "several alternative modes" of non-consent in Or. Rev. Stat. § 163.315 renders Or. Rev. Stat. § 163.425 divisible.

We reject the government's argument for the simple reason that Cabrera was convicted of violating § 163.425, not § 163.315. Even if § 163.315 establishes four "alternative modes" of proving lack of consent, none of these four modes need be proven in order to convict a defendant of second degree sexual abuse. A statute cannot state elements of a crime if none of those "elements" need apply to secure a conviction. *See Beltran*, 489 F.3d at 1045 ("To constitute an element of a crime, the particular factor in question needs to be 'a 'constituent part' of the offense [that] must be proved by the prosecution *in every case* to sustain a conviction under a given statute.'" (alteration and emphasis in original) (citing *United States v. Hasan*, 983 F.2d 150, 151 (9th Cir. 1992) (per curiam))).

Neither the text of the statute nor Oregon case law supports the position that the phrase "does not consent" in § 163.425 is limited to the forms of non-consent delineated in § 163.315. Section 163.425 does not reference § 163.315,

and no provision of the Oregon criminal code purports to define the phrase "does not consent." Contrary to the government's contention, § 163.315 is not a "definitional provision."[12] As we have recognized elsewhere, § 163.315, entitled "Incapacity to consent," merely "delineates four types of legal incapacity that apply to all sexual offenses listed in the Oregon criminal code." *Beltran*, 489 F.3d at 1045. The "four types" are alternative avenues of proving non-consent in all cases. But they are not the exclusive means of doing so, including in cases of victims who do *not* lack capacity to consent.[13] Indeed, it would be odd for the

---

[12] This fact distinguishes this case from *Ganzhi v. Holder*, 624 F.3d 23 (2d Cir. 2010), on which the government relies. *Ganzhi* held, as the government observes, that an otherwise indivisible statute could be rendered divisible by a "separate definitional provision" setting out alternative means of accomplishing an element of the indivisible crime. *Id.* at 29–30. But in both examples at play in *Ganzhi*, the language of the definitional provisions indicated that the provisions exhaustively defined, in all cases, the meaning of the indivisible element. *See id.* at 29 (citing N.Y. Penal Law § 135.00 (stating that "[r]estrain" – an element of the relevant crime – "*means*" certain acts (emphasis added))); *id.* at 30 (citing N.Y. Penal Law § 130.05 (stating that "lack of consent" – an element of the relevant crime – "*results from*" certain acts (emphasis added))). Here, no language in Or. Rev. Stat. § 163.315 purports to *define* the phrase "does not consent" in § 163.425. Section 163.315 merely lists four possible ways of demonstrating a lack of consent – those involving legal incapacity. In any case, *Ganzhi* predated *Descamps*, limiting its relevance to our analysis.

[13] Thus, for example, intercourse perpetrated by the use of force – the subject of *Beltran*'s analysis – might not implicate any of the "four types" listed in § 163.315. We doubt that Oregon would be unable to convict a defendant of second degree sexual abuse if the defendant forcibly raped another person but that person was not a minor, mentally defective, mentally incapacitated, or physically helpless. Or. Rev. Stat. § 163.315; *id.* § 163.305(5) (defining "physically helpless" as "unconscious or for

Oregon legislature to have defined § 163.425's non-consent requirement in § 163.315 without having so much as referenced § 163.315 or employed the same terminology in each.

Further, the government cites no support for its position that § 163.315 defines the non-consent element of § 163.425. To the contrary, Oregon appears routinely to charge and convict defendants of second degree sexual abuse without reference to any one of the four "alternative modes" contained in § 163.315.[14] Oregon's model jury instructions listing the "elements" of second degree sexual abuse reflect that practice. *See* Or. Uniform Crim. Jury Instr. No. 1613 (omitting mention of § 163.315 or its four modes).

A recent decision of the Oregon Supreme Court further reinforces our reading of §163.425. In *Ofodrinwa*, 300 P.3d 154, the court was confronted with the question of whether the phrase "does not consent" in § 163.425 refers "only to those instances in which [a] victim does not actually consent" or whether it also "includes instances in which the victim lacks the capacity to consent." *Id.* at 155. The fact that the Supreme Court had to ask whether legal incapacity can

---

any other reason . . . physically unable to communicate"). We understand "does not consent" in § 163.425 to encompass such abuses.

[14] A quick search of second degree sexual abuse convictions and the underlying indictments yields, *e.g.*, *State v. Steltz*, 313 P.3d 312, 313–16 (Or. App. 2013), *State v. Roquez*, 308 P.3d 250, 252–53 (Or. App. 2013), *State v. Calhoun*, 280 P.3d 1045 (Or. App. 2012), and *State v. Jackson*, 36 P.3d 500, 500–01 (Or. App. 2001). None of the convictions in these cases – all reversed on unrelated grounds – involved victims who were argued to be minors, mentally defective, mentally incapacitated, or physically helpless.

satisfy the "does not consent" requirement strongly suggests that that requirement neither naturally refers to nor is limited to legal incapacity. It would be odd, again, for the Oregon legislature to have defined "does not consent" by a provision entitled "Incapacity to consent," especially where nothing in § 163.315 clearly encompasses actual non-consent. We do not attribute to the Oregon legislature such an oddity. The most logical reading of the statute is that non-consent under § 163.425 is broader than the forms of non-consent specified in § 163.315. Thus, § 163.315 cannot state elements of second degree sexual abuse, because none needs to apply to sustain a conviction.

Finally, our dissenting colleague argues that § 163.425 is divisible because – as *Ofodrinwa* makes clear – the statute "covers the offense of sexual intercourse where the victim, although capable of consenting, does not consent, as well as the offense of sexual intercourse where the victim is incapable of consenting." Partial Dissent at 36–37. But the fact that § 163.425 "covers" multiple means of commission, and that a separate provision of the Oregon code specifies one of those means (legal incapacity), does not render § 163.425 divisible. Indeed, *Descamps* rejects our dissenting colleague's approach almost exactly. Like the partial dissent, the lower court in *Descamps* defended application of the modified categorical approach based on the court's conclusion that the statute at issue in that case "create[d] an *implied* list of every means of commission," even though the statute did not *explicitly* state those means. *Descamps*, 133 S. Ct. at 2289 (alterations in original) (quoting *United States v. Aguila-Montes de Oca*, 655 F.3d 915, 927 (9th Cir. 2011) (en

banc)) (internal quotation marks omitted).[15]  Similarly, the dissent here argues that the phrase "does not consent" in § 163.425 is divisible because the phrase *implicitly* covers both actual non-consent and incapacity to consent. *Descamps*, however, rejects that approach because it would not "enable a sentencing court to conclude that a jury (or judge at a plea hearing) has convicted the defendant of every element of the generic crime." *Id.* at 2290.  In other words, *implied* means of commission cannot render a statute divisible because, unlike with an explicitly divisible statute, they do not allow the sentencing court to home in on the defendant's actual crime of conviction; "[a]s long as the statute itself requires only an indeterminate [element]," like non-consent, "that is all the indictment must (or is likely to) allege and all the jury instructions must (or are likely to) mention." *Id.*  To use this case's example, to convict a defendant under § 163.425, the state need prove only that a defendant has engaged in intercourse with another and that the other "does not consent thereto."  In the general run of cases, then, a sentencing court cannot tell whether the jury or judge convicted a defendant of intercourse with a victim who did not actually consent or a victim who lacked capacity to consent.  The partial dissent's approach thus creates just the problem that *Descamps* identified and that motivated the Court specifically to reject it.  We also note that our dissenting colleague's approach would render every criminal statute divisible in which a separate provision of the criminal code specified one or more means of commission.  We would hesitate before adopting a rule with such sweeping

---

[15] *Aguila-Montes de Oca* was abrogated by *Descamps*, as recognized in *United States v. Flores-Cordero*, 723 F.3d 1085, 1089 (9th Cir. 2013).

implications, even if *Descamps* did not already squarely foreclose it.[16]

In short, Cabrera's statute of conviction, Or. Rev. Stat. § 163.425, is not divisible. The statute states "a single, indivisible set of elements," and the modified categorical approach does not apply. *Descamps*, 133 S. Ct. at 2282; *see also Acosta-Chavez*, 727 F.3d at 909 (holding that where the state statute's age element is broader than the federal definition and "is not divisible . . . we may not apply the modified categorical approach").

## IV.

Cabrera, having been convicted in Oregon of the crime of second degree sexual abuse and having been ordered to register as a sex offender, chose to travel interstate and failed to register under SORNA. We conclude, as have our sister circuits, that Congress has the authority under the Commerce Clause to enact SORNA and to require Cabrera to register under SORNA as a sex offender.

---

[16] The partial dissent's divisibility argument loses sight of the fact that, under *Descamps*, what must be divisible are the elements of the crime, not the mode or means of proving an element. *See Descamps*, 133 S. Ct. at 2293 (noting that we "may use the modified approach only to determine which *alternative element* in a divisible statute formed the basis of the defendant's conviction"); *id.* at 2283 ("The key, we emphasized, is elements, not facts."). All of the partial dissent's arguments focus on one of the means of proving the element of "does not consent." *See* Partial Dissent at 36 n.4 ("§ 163.315 sets forth divisible definitions of legal incapacity"); *id.* at 38 (§ 163.315 is a "divisible state statute [] as that term is defined . . . in *Descamps*"). Moreover, Cabrera's crime of conviction was under § 163.425 – not § 163.315 – and the partial dissent does not respond to our discussion that a violation of § 163.425 can be proved without resort to § 163.315. *See* Maj. Op., *supra*, at 21–24.

The district court erred, however, in applying the modified categorical approach to determine that Cabrera qualified as a Tier III sex offender.  Cabrera's prior conviction under Or. Rev. Stat. § 163.425 is categorically overbroad and cannot serve as a sentencing predicate under 42 U.S.C. § 16911(4).  The government has made an inadequate showing of harmlessness.[17]  *See Acosta-Chavez*, 727 F.3d at 909 (recognizing that the government bears the burden of establishing harmlessness).  Therefore, we vacate Cabrera's sentence and remand to the district court pursuant to 18 U.S.C. § 3742(f)(1) for resentencing  proceedings consistent with this opinion.

## CONVICTION AFFIRMED, SENTENCE VACATED and REMANDED FOR RESENTENCING.

---

CALLAHAN, Circuit Judge, concurring and dissenting:

I agree with my brethren that Congress had the authority to enact the Sex Offender Registration and Notification Act ("SORNA") and that SORNA's application to Pedro Cabrera-Gutierrez ("Cabrera") is constitutional.  We part company, however, in our reading of the Supreme Court's opinion in *Descamps v. United States*, 133 S. Ct. 2276 (2013), and its

---

[17] The government states conclusorily that even if Cabrera were classified as a Tier I offender, his actual sentence (17 months) would fall within the adjusted Guideline range, properly construed (15–21 months, instead of 27–33 months as a Tier III offender).  This argument ignores that the district court gave Cabrera a 16-month downward variance for time served.  Assuming the district court would have applied the same or a similar variance, Cabrera's sentence would have fallen well below the 17 months to which the court sentenced him.

application to Cabrera's state conviction. Because I read the relevant Oregon statutes to be "divisible" as that term is defined by the Supreme Court in *Descamps*, I would affirm Cabrera's conviction and his sentence as a Tier III sex offender.

## I

The federal statute that concerns Cabrera's situation is 42 U.S.C. § 16911(4) which defines a "tier III sex offender" as "a sex offender whose offense is punishable by imprisonment for more than 1 year and . . . is comparable to or more severe than . . . aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18)."[1]

---

[1] 42 U.S.C. § 16911(4) defines a Tier III offender as follows:

> The term "tier III sex offender" means a sex offender whose offense is punishable by imprisonment for more than 1 year and–
>
> (A) is comparable to or more severe than the following offenses, or an attempt or conspiracy to commit such an offense:
>
> > (i) aggravated sexual abuse or sexual abuse (as described in sections 2241 and 2242 of Title 18); or
> >
> > (ii) abusive sexual contact (as described in section 2244 of Title 18) against a minor who has not attained the age of 13 years;
>
> (B) involves kidnapping of a minor (unless committed by a parent or guardian); or

Section 2242 defines the crime of sexual abuse to include knowingly engaging "in a sexual act with another person if that other person is – (A) incapable of appraising the nature of the conduct; or (B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act."[2]

---

(C) occurs after the offender becomes a tier II sex offender.

[2] 18 U.S.C. § 2242 reads:

Whoever, in the special maritime and territorial jurisdiction of the United States or in a Federal prison, or in any prison, institution, or facility in which persons are held in custody by direction of or pursuant to a contract or agreement with the head of any Federal department or agency, knowingly–

(1) causes another person to engage in a sexual act by threatening or placing that other person in fear (other than by threatening or placing that other person in fear that any person will be subjected to death, serious bodily injury, or kidnapping); or

(2) engages in a sexual act with another person if that other person is–

(A) incapable of appraising the nature of the conduct; or

(B) physically incapable of declining participation in, or communicating unwillingness to engage in, that sexual act;

or attempts to do so, shall be fined under this title and imprisoned for any term of years or for life.

Two Oregon statutes govern Cabrera's prior conviction. He was convicted under Or. Rev. Stat. § 163.425 (1998), which states: "(1) A person commits the crime of sexual abuse in the second degree when that person subjects another person to sexual intercourse, deviate sexual intercourse . . . and the victim does not consent thereto." Or. Rev. Stat. § 163.425 (1998). In addition, Or. Rev. Stat. § 163.315 provides that "does not consent thereto" includes instances where "(1) A person is considered incapable of consenting to a sexual act if the person is: (a) Under 18 years of age; (b) Mentally defective; (c) Mentally incapacitated; or (d) Physically helpless." *See State v. Ofodrinwa*, 300 P.3d 154 (Or. 2013) (en banc).

A careful reading of *Ofodrinwa* and the Oregon statutes reveals that the Oregon scheme is divisible and that Cabrera pled guilty to sexual assault as that term is defined in 18 U.S.C. § 2242.

## II

Our task, as refined by the Supreme Court's opinion in *Descamps*, is to determine whether Cabrera's state conviction is a crime of sexual abuse as that term is defined in 18 U.S.C. § 2242. Following *Taylor v. United States*, 495 U.S. 575 (1990), we first determine whether the state statute has the same elements as the generic federal crime or defines the crime more narrowly. *Descamps*, 133 S. Ct. at 2283. The Supreme Court held: "But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as a[] . . . predicate [for the enhancement], even if the defendant actually committed the offense in its generic form. The key, we emphasized, is elements, not facts." *Id*.

Here, the Oregon statutory statute is broader than the federal crime of sexual abuse. The federal statute requires that the victim be incapable of appraising the nature of the conduct, of declining to participate, or communicating unwillingness. *See* 18 U.S.C. § 2242. But Or. Rev. Stat. § 163.315 requires only that the victim "does not consent." In addition, the Or. Rev. Stat. § 163.315 provides that anyone under 18 years of age is considered incapable of consenting to a sexual act. However, we have held that under federal law a minor is someone under the age of 16. *See United States v. Acosta-Chavez*, 727 F.3d 903, 908–09 (9th Cir. 2013). Because Or. Rev. Stat. §§ 163.315 and 163.425 are broader than the definition of sexual abuse in 18 U.S.C. § 2242, we turn to the modified categorical approach.

In *Descamps*, the Supreme Court clarified that under the modified categorical approach, the focus is not on what the defendant did, but on "which statutory phrase was the basis for the conviction." *Descamps*, 133 S. Ct. at 2285 (quoting *Johnson v. United States*, 559 U.S. 133, 144 (2010)). The Court explained:

> Applied in that way—which is the only way we have ever allowed—the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's. All the

> modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates "several different . . . crimes." *Nijhawan* [*v. Holder*], 557 U.S. [29], at 41 [(2009)]. If at least one, but not all of those crimes matches the generic version, a court needs a way to find out which the defendant was convicted of. That is the job, as we have always understood it, of the modified approach: to identify, from among several alternatives, the crime of conviction so that the court can compare it to the generic offense.

*Id*. (parallel citation omitted).

The Court's definition of divisible is shaped by its response to Justice Alito's dissent. Justice Alito wrote:

> My understanding is that a statute is divisible, in the sense used by the Court, only if the offense in question includes as separate elements all of the elements of the generic offense. By an element, I understand the Court to mean something on which a jury must agree by the vote required to convict under the law of the applicable jurisdiction.

*Id*. at 2296. He then goes on to observe that the Court's decisions in *Shepard v. United States*, 544 U.S. 13 (2005), *Johnson*, 559 U.S. 133, and *Taylor*, 495 U.S. 575, suggest a generous definition of divisible. He commented:

*Shepard* concerned prior convictions under two Massachusetts burglary statutes that applied not only to the entry of a "building" (as is the case with generic burglary) but also to the entry of a "ship, vessel, or vehicle." Mass. Gen. Laws Ann., ch. 266, § 16 (West 2000). *See also* § 18; 544 U.S. at 17, 125 S. Ct. 1254. And the *Shepard* Court did not think that this feature of the Massachusetts statutes precluded the application of the modified categorical approach. *See id.*, at 25–26, 125 S. Ct. 1254; *ante*, at 2283 – 2284. *See also Nijhawan*, 557 U.S. at 35, 129 S. Ct. 2294 (discussing *Shepard*).

In today's decision, the Court assumes that "building" and the other locations enumerated in the Massachusetts statutes, such as "vessel," were alternative elements, but that is questionable. It is quite likely that the entry of a building and the entry of a vessel were simply alternative means of satisfying an element.

*Id*. at 2297. Justice Alito continued:

*Johnson*, like *Shepard*, involved a statute that may have set out alternative means, rather than alternative elements. Under the Florida statute involved in that case, a battery occurs when a person either "1. [a]ctually and intentionally touches or strikes another person against the will of the other; or 2. [i]ntentionally causes bodily harm to another

person." Fla. Stat. § 784.03(1)(a) (2010). It is a distinct possibility (one not foreclosed by any Florida decision of which I am aware) that a conviction under this provision does not require juror agreement as to whether a defendant firmly touched or lightly struck the victim. Nevertheless, in *Johnson*, we had no difficulty concluding that the modified categorical approach could be applied.

*Id*. at 2298.[3]

The Court responded to Justice Alito's concerns in its footnote 2.

But if, as the dissent claims, the state laws at issue in those cases set out "merely alternative means, not alternative elements" of an offense, *post*, at 2298, that is news to us. And more important, it would have been news to the *Taylor*, *Shepard*, and *Johnson* Courts: All those decisions rested on the explicit premise that the laws "contain[ed] statutory phrases that cover several different . . . crimes," not

---

[3] Justice Alito further noted that *Taylor* "may also have involved a statute that was not divisible, but the situation is less clear." *Id*. at 2298 n.2. The Missouri burglary provisions "applied not only to buildings but also to 'any booth or tent,' 'any boat or vessel,' or a 'railroad car.'" *Id*. Justice Alito notes that "[i]t is not entirely clear whether a Missouri court would have required jurors to agree on a particular choice from this list." *Id*.

several different methods of committing one offense. *Johnson*, 559 U.S. at 144 (citing *Nijhawan*, 557 U.S. at 41).

*Id*. at 2298 n.2 (parallel citations omitted).

Thus, in determining whether a state statute is divisible, we may take as our mark the Supreme Court's indication that the statutes in *Shepard*, which defined burglary to include entry of a building or a ship, and in *Johnson*, which defined battery as either a touching of a person against his will or intentionally causing bodily harm, were divisible.

### III

Applying *Descamps* to Cabrera's case, we learn that although Or. Rev. Stat. § 163.425 is broader than 18 U.S.C. § 2242, the Oregon Supreme Court has interpreted § 163.425 as covering convictions based either on the victim's lack of consent or on the victim's incapacity to consent.

In *Ofodrinwa*, 300 P.3d 154, the Oregon Supreme Court ruled that "does not consent" as used in § 163.425 covers both lack of capacity to consent and lack of actual consent. *Id*. at 166. In *Ofodrinwa*, the defendant argued that "does not consent" in § 163.425 referred only to instances in which the victim does not actually consent. He asserted that there was no evidence that his victim had not consented, and that the victim's lack of capacity to consent was not sufficient to prove a violation of the statute. *Id*. at 155. The Oregon Supreme Court rejected that interpretation holding that the state could prove sexual abuse under § 163.425 either by showing the victim's lack of actual consent or by showing

that the victim lacked the capacity to consent pursuant to Or. Rev. Stat. § 163.315. *Id.* at 167.

Thus, the Oregon statutory scheme is divisible as that term is defined in *Descamps*.[4]  Section 163.425 covers the offense of sexual intercourse where the victim, although capable of consenting, does not consent, as well as the

---

[4] This conclusion is consistent with our opinion in *United States v. Beltran-Munguia*, 489 F.3d 1042 (9th Cir. 2007). In *Beltran*, the issue was whether a conviction under § 163.425 qualifies as a crime of violence under United States Sentencing Guideline § 2L1.2. *Id*. at 1043. In determining that the conviction did not qualify as a crime of violence, we noted that Oregon Rev. Stat. § 165.315 "delineates four types of legal incapacity that apply to all sexual offenses listed in the Oregon criminal code, including second-degree sexual abuse." *Id*. at 1045. We wrote:

> Given the applicability of ORS section 163.315 to ORS section 163.425, a perpetrator could commit second-degree sexual abuse by surreptitiously adding to his victim's drink a drug that affects one's judgment, thereby rendering her "mentally incapacitated." She would then be legally incapable of consent even if she participated fully in the sex act. Similarly, the victim could be "mentally defective," yet fully physically cooperative. Under both those circumstances, a perpetrator would not necessarily have to use, attempt to use, or threaten to use any force above and beyond the force inherent in the act of penetration, *see infra* p. 1047, to commit second-degree sexual abuse. In other words, under such circumstances, a perpetrator would not have categorically committed a "crime of violence," as the term is defined for purposes of § 2L1.2(b)(1)(A)(ii).

489 F.3d at 1046. Of course, *Beltran* concerned a different feature of the Oregon statute than the question raised by Cabrera, but our opinion recognized both the relationship between § 163.425 and § 163.315 and that § 163.315 sets forth divisible definitions of legal incapacity.

offense of sexual intercourse where the victim is incapable of consenting.  Furthermore, Or. Rev. Stat. § 163.315 provides for distinct definitions of  incapable.  The victim may be shown to be incapable because she is under the age of 18, mentally defective, mentally incapacitated, or physically helpless.  Although under 18 years of age would not qualify for incapacity under 18 U.S.C. § 2242, the other grounds of incapacity are covered by § 2242.

In *Shepard*, 544 U.S. at 26, the Supreme Court held that in determining whether a plea of guilty to a nongeneric statute necessarily admitted elements of the generic offense, a court's review "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information."  *See also Young v. Holder*, 697 F.3d 976, 983 (9th Cir. 2012) (en banc) ("we may review only the charging instrument, transcript of the plea colloquy, plea agreement, and comparable judicial record of this information").

Here, the district court had Cabrera's handwritten "Petition to Enter Plea of Guilty" to sexual abuse in the second degree.  The petition states:

> I on May 2, 1998 did knowingly have sexual intercourse with [redacted] and she was unable to legally consent to having sexual intercourse with me because she was under the influence of alcohol at the time of the sexual intercourse.  Further [redacted] was 15 years old on May 2, 1998.

Thus, Cabrera freely admitted to violating Or. Rev. Stat. § 163.425 by having sexual intercourse with a victim who was mentally incapacitated as the term is defined in Or. Rev. Stat. § 163.315(1) (c).**[5]**

It is true that Cabrera also stated that his victim was a minor, and perhaps a conviction based solely on his violation of Or. Rev. Stat. § 163.315(1)(a) (lack of consent because victim was under 18 years of age), would not fit within the generic definition of sexual assault. However, Cabrera chose to first admit to his victim's actual incapacity to consent, a violation of a divisible portion of the state statutes that fall well within the federal definition of sexual abuse.**[6]**

Because: (1) Or. Rev. Stat. §§ 163.425 and 163.315 are divisible state statutes as that term is defined by the Supreme Court in *Descamps*; (2) Cabrera's guilty plea unquestionably shows that he pled guilty to sexual intercourse with a person who was mentally incapacitated, as that term is defined in Or. Rev. Stat. 163.315(1)(c); and (3) sexual intercourse with a person who was mentally incapacitated falls well within the generic definition of the crime of sexual abuse set forth in

---

**[5]** Intoxication can be the cause of a victim's incapacity to consent. *See United States v. Smith*, 606 F.3d 1270, 1281–82 (10th Cir. 2010) (noting that victim was heavily intoxicated before the assault); *United States v. Carter*, 410 F.3d 1017, 1027 (8th Cir. 2005) (holding that evidence the victim smoked marijuana and drank alcohol, and felt drowsy and really tired, was sufficient to conclude that the victim was unable to appraise the nature of the perpetrator's conduct).

**[6]** Our opinion in *Young*, 697 F.3d 976, is not to the contrary. There we were concerned with a plea that implied a conviction for "A" *or* "B." *Id*. at 986–87. Here, Cabrera pled guilty to "A" *and* "B."

18 U.S.C. § 2242, I would hold that the district court properly sentenced Cabrera as a Tier III sex offender.